## HAZARD POWDER CO. v. VOLGER.

(Circuit Court of Appeals, Eighth Circuit. September 18, 1893.)

### No. 219.

1. NEGLIGENCE — EXPLOSION OF POWDER MAGAZINE — ACTION FOR INJURY TO PROPERTY—WHEN MAINTAINABLE.

Proof of actual and peaceable possession of land is sufficient to enable the possessor to maintain an action against a powder company for damages sustained to the buildings thereon by the explosion of a magazine erected and maintained by the company in violation of a city ordinance, and the admission in evidence of imperfect deeds in his chain of title is not prejudicial error.

2. SAME—MATTERS OF DEFENSE SUBSEQUENT TO INJURY.

A deed to defendant of the land upon which its magazine and the house of plaintiff were situated, executed by the original owner four years after the explosion complained of, is inadmissible in such action as evidence for defendant.

3. SAME—IDENTIFICATION OF PLAT OF CITY.

A plat of the city of Cheyenne, which was laid out by the Union Pacific Railroad Company as a town site, is sufficiently authenticated as the official plat by the fact that it was made by the surveyor and chief engineer of the company, was mentioned in the act incorporating the city, (Laws Wyo. 1877, p. 37,) and has always been recognized as the official plat by the city and its officers, and by surveyors and conveyancers.

**4. NUISANCE—POWDER MAGAZINE—CITY ORDINANCE.**
The maintenance of a magazine containing a large quantity of powder within the city limits, in violation of a city ordinance, is a nuisance which will render the owner liable for any injury caused to strangers by an explosion, from whatever cause resulting.

**5. SAME—KNOWLEDGE OF PERSON INJURED—CONTRIBUTORY NEGLIGENCE.**
A person is not guilty of contributory negligence in living in his home near such magazine with knowledge of the danger to be apprehended therefrom

**6. DAMAGES—NEGLIGENCE—PERSONAL INJURIES.**
The damages to which a man is entitled for nursing his wife and doing her work while she is suffering from injuries caused by the negligence of another are the value of the service of a competent servant to perform the same duties, and not the amount of wages which he might have earned by working at his trade.

**7. APPEAL—CORRECTING ERRONEOUS ASSESSMENT OF DAMAGES.**
Where the trial court has erroneously instructed the jury as to the measure of damages in a certain particular, and it is apparent that the erroneous assessment under the instruction could not have exceeded a given sum, the appellate court may affirm the judgment on condition that plaintiff remit such excess.

In Error to the Circuit Court of the United States for the District of Wyoming.

At Law. Action by Schultz Volger against the Hazard Powder Company for damages resulting from the explosion of defendant's powder magazine. Judgment for plaintiff. Defendant brings error. Judgment affirmed on condition that plaintiff remit a portion of the amount of recovery.

John W. Lacey and Willis Van Devanter, for plaintiff in error.
A. C. Campbell and P. Gad Bryan, for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

CALDWELL, Circuit Judge. This was an action brought by Schultz Volger, the defendant in error, against the Hazard Powder Company, the plaintiff in error. The pleadings in the case are extremely prolix and redundant. The substance of the complaint is that the plaintiff was in the lawful possession of a parcel of real estate, and a dwelling house situated thereon, in the city of Cheyenne, and that the defendant, in violation of an ordinance of the city, erected and maintained therein a powder magazine, situated near by the plaintiff's house, in which it stored and kept a large quantity of gunpowder, and that on the 2d day of July, 1885, the powder in the magazine exploded, destroying the plaintiff's house and its contents, and seriously injuring his wife and child. The defenses were a general denial, and that the powder company owned and was in possession of the premises where the plaintiff was living at the time of the explosion, and that the plaintiff was living thereon as a trespasser, with the knowledge of the location of the magazine and its dangers. There was a trial, and verdict and judgment for the plaintiff, and the powder company sued out this writ of error.

The plaintiff claimed he entered upon the premises and erected his house thereon under a license from James Talbot, the owner of

the land, and the first two errors assigned relate to the admission in evidence, over the defendant's objection, of a deed from John Talbot to James Talbot, and from the latter to the former, for land claimed to embrace the parcel on which the plaintiff's house stood. It is objected in this court that these deeds are void for uncertainty in the description of the premises, but this ground of objection was not interposed in the lower court. The objection there made was the very general and indefinite one that they were "incompetent and irrelevant." But, waiving this objection to the sufficiency of the exceptions, they are unavailing for another reason. All the evidence shows that the plaintiff was in the actual and peaceable possession of the premises, and that was sufficient evidence of his right to the premises to enable him to maintain this action. Railway Co. v. Johnson, 54 Fed. Rep. 474; Railroad Co. v. Lewis, (9th Circuit,) 7 U. S. App. 254, 2 C. C. A. 446, 51 Fed. Rep. 658. If, therefore, the admission of the deeds in evidence was an error, it was an error without prejudice.

It is assigned for error that the court excluded from the evidence a quitclaim deed from the Union Pacific Railroad Company to the powder company, dated March 8, 1889, for the premises upon which the magazine and the plaintiff's house were situated. This deed was made four years after the explosion, and was rightly excluded on that ground.

The fourth specification of error is that the court admitted in evidence the plat of the city of Cheyenne made by Gen. G. M. Dodge, as surveyor and chief engineer of the Union Pacific Railway Company. The following certificates were annexed to this plat:

### "Dedication of the Town of Cheyenne.

"I, G. M. Dodge, do hereby certify that I am a surveyor and civil engineer; that I caused to be surveyed accurately the town of Cheyenne, in the county of Laramie, in the territory of Wyoming, a plat of which is hereto appended, and that the streets, alleys, lanes, avenues, squares, parks, commons, and such pieces of land as were set apart for public, village, town, city, or railroad use, or dedicated to charitable, religious, or educational purposes, were well and accurately staked off and marked.          G. M. Dodge,
"Surveyor and Chief Engineer U. P. R. R.

"I, G. M. Dodge, being trustee for the owners of the lots, lands, and premises described and shown on the foregoing plat, do hereby designate and name the same the 'Town of Cheyenne,' and dedicate the streets, alleys, and public grounds thereof, as shown on the said plat, to the public use.
"G. M. Dodge,
"Chief Engineer U. P. R. R. and Trustee.
"In presence of J. M. Eddy, Assistant Engineer."

An act to incorporate the city of Cheyenne, passed by the territorial legislature in 1877, (Sess. Laws Wyo. 1877, p. 37,) provided that "all that portion of the territory of Wyoming situated on Crow Creek, in the county of Laramie, where the Union Pacific Railroad crosses the same, laid out and platted as a town site by the Union Pacific Railroad Company under and by the name of 'Cheyenne,' is hereby declared to be a corporation by the name of the 'City of Cheyenne.'"

The evidence shows that this plat is now, and always has been recognized and accepted by the city and its officers, and by surveyors and

conveyancers, as the official plat of the city, and as the plat mentioned in the act of the legislature incorporating the city.

A sufficient answer to this assignment of error is found in the fact that the record does not show that the defendant objected to the introduction of the plat in the lower court. The objection to its competency is made for the first time in this court, upon the ground that it is not "shown that the instrument is the act of the Union Pacific Railroad Company." The objection is not well founded in fact. It sufficiently appears from the evidence that the plat was made by authority of the Union Pacific Railroad Company, and is the plat referred to in the act of the legislature incorporating the city. Confessedly, according to the plat, the plaintiff's house and the defendant's powder magazine were within the city limits.

In its charge the court below said to the jury:

"Some question was raised during the progress of the trial whether the magazine was, in fact, within the limits of the city. Upon that question, plaintiffs exhibited a map which, I believe, was made by General Dodge, and signed by himself as chief engineer of the Union Pacific Railroad Company,—a map of the city upon which the town site was divided into blocks, lots, streets, and alleys; and in that connection an act of the territorial legislature was introduced in evidence, which declares that the city of Cheyenne shall include so much as was embraced within this map. It is true, the reference to the map was not very clear, inasmuch as the act described the map as one made by the Union Pacific Railroad Company, and it did not appear that this map was made by the railroad company, except in so far as it might be inferred from the circumstances that it was made and signed by the chief engineer of that company; but, inasmuch as it does not appear that there was any other map to which the legislature referred, we must assume that in the act to which reference has been made it referred to this map, and that the city was established upon the territory indicated upon that map. And as to that the testimony, uncontradicted, is that the magazine was located upon block thirty-one within the plat made by Dodge. From that, upon these facts, we assume that the magazine was within the city, and was within the prohibition of the ordinance passed by the city council of the city of Cheyenne."

This charge, in view of the uncontradicted evidence, is not subject to any just exception, and the eleventh specification of error based thereon, as well as the fifth, sixth and eighth specifications of error, which relate to the admission of the plat and its probative force, must share the fate of the fourth assignment. The court below indicated to the jury with sufficient distinctness that the burden of proof was upon the plaintiff, and the ninth and tenth specifications of error, which assume the fact to be otherwise, are without merit.

The seventh specification of error complains of the refusal of the court to instruct the jury that if the title to the land where the plaintiff's house and the defendant's magazine were situated was in the defendant, and the defendant was in possession of the same, and the plaintiff was a trespasser thereon, then he could not recover. There is no evidence that would justify the court in submitting these issues to the jury. There was no evidence that the defendant owned the land, or that it had possession thereof, other than the parcel upon which the magazine stood, or that the plaintiff was a trespasser thereon.

In the course of its charge the court said to the jury:

"In this instance the character of this magazine as a public nuisance comes almost entirely from the circumstance that there was an ordinance of the city of Cheyenne forbidding the maintenance of such magazine within the city limits. There should be no question as to the authority of the city to pass that ordinance, so that we may consider the storage of powder in large quantities as forbidden by the terms of the ordinance; and upon that, the magazine being forbidden by law, we must say that if anything happened from an explosion occurring in the magazine, however it was brought about, whether by lightning or from any other cause, the defendant owning that magazine and maintaining it there should be liable to the persons so injured."

The defendant has no reason to complain of this instruction. It certainly stated the law as favorably to the defendant as the facts of the case would warrant. The maintenance by the defendant of a powder magazine, containing a large quantity of powder, within the city limits, in violation of the city ordinance, was a nuisance which rendered the defendant liable for the injury resulting to the plaintiff from its explosion. It is no defense to such an action that the magazine was properly constructed and the powder carefully stored therein, and that the explosion was due to no personal negligence of the defendant or its agents. It is liable for the injuries resulting from its explosion from any cause, because its location under the ordinance made it a nuisance. Powder Co. v. Tearney, 131 Ill. 322, 23 N. E. Rep. 389; Cheatham v. Shearon, 1 Swan, 213; 1 Dill. Mun. Corp. § 374, note, p. 449.

Nor is it any answer to such an action to say that the plaintiff knew the danger he incurred in living near the magazine, and was therefore guilty of contributory negligence. The plaintiff was not driven to the alternative of abandoning his home or releasing the defendant from all claim for damages for the injuries he might sustain by reason of the maintenance by the defendant of such a nuisance. Marine Ins. Co. v. St. Louis, I. M. & S. Ry. Co., 41 Fed. Rep. 643, 652, 653; Railroad Co. v. English, 73 Ga. 366.

In Pollock on Torts (page 352) the learned author says:

"Neither does it make any difference that the very nuisance complained of existed before the plaintiff became owner or occupier. It was at one time held that if a man came to the nuisance, as was said, he had no remedy; but this has long ceased to be the law as regards both the remedy by damages and the remedy by injunction."

In its charge in chief the court said to the jury:

"I think, gentlemen, that to the extent that Mr. Volger was withdrawn from his ordinary business by the situation of his wife, necessarily,—by that I mean time which it was necessary for him to give to her care,—he may be allowed according to the rate of his ordinary wages; and so, also, if you believe that the infirmity which she says she has suffered from in all these years, to the extent to which he may have withdrawn from his ordinary affairs in order to give attention to her, I think he may have compensation. If he were a person in circumstances able to employ some one to manage his house, perhaps I would not be able to say that to you; but when a workingman is compelled by the illness of his wife to withdraw himself from his ordinary occupation, to attend exclusively to caring for her, in so far as the illness may proceed from the wrong of another, he may have compensation for his time."

This paragraph of the charge was duly excepted to by the defendant. The court had previously told the jury that the plaintiff was entitled to recover his expenses incurred in doctoring, nursing, and caring for his wife, and for the loss of her services as a housewife, down to the trial, and for such longer period as the evidence showed the disabilities resulting from the explosion were likely to continue. The evidence shows that the wife's services were worth $20 per month, and that the plaintiff was a carpenter, and earned, when working at his trade, $3.50 per day. It was this latter sum the jury were told they might award the plaintiff for the time he was employed in nursing his wife and doing her work. The amount the plaintiff was entitled to recover for nursing his wife and doing her work was the value of his services in these capacities, or the value of the services of a competent servant to perform the service, and not the amount of wages he might have earned working at his trade as a carpenter. Town of Salida v. McKinna, 16 Colo. 523, 27 Pac. Rep. 810; Barnes v. Keene, (N. Y. App.; filed Feb. 12, 1892,) 29 N. E. Rep. 1090. The last case cited was an action by a father to recover expenses incurred in nursing his infant daughter, who was injured through the defendant's negligence. The father nursed the daughter, and was permitted by the lower court to prove that his occupation was that of theatrical manager, at which he earned $50 a week, which he had to give up during the time he was nursing his daughter. The court said:

"The rule governing the assessment of damages in such a case as this is compensation for pecuniary loss, and the amount of that loss is not affected by the financial condition of the person sustaining it. The accidental circumstance that the loss may at the time bear more heavily upon a poor man than a rich man cannot swell the amount that the person causing that loss is legally responsible for. While the plaintiff was entitled to recover the value of his services as a nurse, he was not entitled to recover, in addition thereto, what he might have made if he had not abandoned his business engagement. He could not recover for services rendered during a specified period, and for loss of time during the same period. He was entitled to have his pecuniary loss, necessarily caused by the accident, made good to him. This included the services of a nurse as long as a nurse was needed, and, if the plaintiff saw fit to act in that capacity, he was entitled to the value of his services in that capacity; but, if he abandoned a more lucrative occupation in order to act as nurse, the value of his services while engaged in that occupation could not properly be considered by the jury in estimating the value of his services while acting as a nurse. His services as a nurse were worth no more because he was able, in some other calling, to earn a large income."

Upon the evidence the utmost amount the jury could have allowed the plaintiff under this instruction was $3.50 per day for six months, less $20 per month, the value of the wife's services or the services of one to do her work. The erroneous assessment could not, therefore, have exceeded the sum of $426. This is the only error in the case, and it may be removed by the defendant in error remitting that amount of the judgment. Kavanaugh v. City of Janesville, 24 Wis. 618; Town of Salida v. McKinna, 16 Colo. 523, 27 Pac. Rep. 810; Elliott, App. Proc. §§ 570, 573.

If within 60 days the defendant in error will file in this court a remittitur for the sum of $426, thereupon the judgment below,

less the sum remitted, will be affirmed, without costs to either party in this court. If the defendant in error shall decline to remit said sum within the time mentioned, the judgment will be reversed, at the costs of the defendant in error, and the cause remanded with directions to grant a new trial.