CHICAGO, R. I. & P. RY. CO. v. WEHRMAN.

No. 136.   Opinion Filed November 9, .1909.

(105 Pac. 328.)

1. CARRIERS—Carriage of Freight—Limitation of Liability—Validity. The common-law liability of a carrier for the safe carriage of property may be limited by a special contract with the shipper. (executed in October, 1904), where such contract is supported by a consideration, is reasonable, and fairly entered into by the shipper. and does not attempt to cover losses caused by the negligence or misconduct of the carrier.

2. CARRIERS—Carriage of Live Stock—Contributory Negligence— Failure to Remain in Car. It is not negligence for the shipper of live stock, who, under a special contract, accompanies same during transportation for the purpose of feeding, watering, loading, and unloading and taking care thereof. not to remain in the car with the live stock while the train is in motion in order to prevent or extinguish any fires that may occur in the car, when the contract provides that the shipper, or his agent, accompanying the live stock shall remain seated in the caboose car attached to the train while the train is in motion.

3. CARRIERS—Carriage of Live Stock—Limitation of Liability— Validity. A special contract executed between a carrier and a shipper in consideration of a reduced freight rate, providing that,

in case of total loss of any of the live stock covered by the contract, the liability of the carrier shall not exceed a maximum valuation of the live stock stipulated in the contract, is not a contract attempting to exempt the carrier from liability arising from its own negligence; and, where the contract is reasonable and just, and has been fairly entered into by the shipper, the same will be upheld by the court as a proper and lawful manner of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives.

4.    **SAME.** Such a contract is not in violation of section 706, Wilson's Rev. & Ann. St. 1903, forbidding a common carrier to contract to exonerate itself from liability for gross negligence.

5.    **NEW TRIAL—Grounds—Excessive Damages—Remittitur.** Where excessive damages have been allowed under an erroneous instruction. if the amount thereof can be determined and segregated from the verdict, a new trial will not be granted, unless the plaintiff refuses to remit the excessive part of the verdict.

(Syllabus by the Court.)

*Error from District Court, Garfield County; M. C. Garber, Judge.*

Action by Fritz Wehrman against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Remanded, with directions.

This action was commenced by defendant in error, hereinafter called plaintiff, in the district court of Garfield county, on April 20, 1905, before the admission of the state, against the Chicago, Rock Island & Pacific Railway Company, plaintiff in error, defendant below. Plaintiff alleged in his petition that, on or about the 27th day of October, 1904, he delivered to defendant certain property, consisting of household goods and live stock, to be transported from Stover, Mo., to Lahoma, Okla.; that upon that date he and defendant entered into a contract, which contract he pleaded, attaching the same to, and making it a part of, his petition; that by said contract defendant agreed to transport from Stover, Mo., to Lahoma, Okla., the property delivered to. it by him; that between the towns of Stover and Windsor, Mo., defendant carelessly and negligently set fire to the car by a spark from its engine; and that, by reason of the smoke and heat resulting from the fire, all the live stock in the car were suffocated and killed, to his damage in the sum of $991. He charged that

Statement of Facts.

defendant was negligent in that the car furnished to him by it was not a suitable car in which to transport his property; that the floor and lower parts of the car furnished were soaked with oil and were inflammable. He further charged that a door in the end of the car was left open, and that the railway company negligently placed the car next to the engine, with the end in which was the open door facing the engine; that the engine and smokestack were out of repair, and that by reason of all these facts the fire occurred, and his property was destroyed. Defendant's answer was a general denial.

The evidence showed that the car which was furnished by the railway company, and into which was loaded plaintiff's property, consisting of household goods, four horses, two mules, four cows, and some chickens, was an ordinary box car in good condition, and suitable for the purpose, except that it contained a very bad odor, which neither man nor live stock in the car could long endure without ventilation; that in one end of the car was a door which, while the live stock was being loaded, was, for the purpose of ventilation, opened by one of plaintiff's agents. One of the employees of the railway company, who discovered the door open, closed it, and directed the person assisting plaintiff in loading not to open it again. After the car had been loaded, and while the same was being transferred from the switch track to the main line to be placed in the train, one of the persons who assisted plaintiff in loading the stock climbed upon the end of the car next to the engine and opened again the door. While he was in the act of opening the door, one of the company's brakemen commanded him not to open it, but it does not appear that the person opening the door heard the brakeman, and after the door had been opened by him, he got down off the car while it was being transferred from the track on which it was loaded to the main track and into the train. The car was placed in the train next to the engine, with the end containing the opened door next to and facing the engine. The car was bedded with straw four to eight inches deep, and the live stock were in the end of the car next to the opened door and the engine. The train

consisted of 15 to 20 cars, 7 or 8 of which were loaded with merchandise. After the train had proceeded about 25 miles, the car became ignited. The two mules, one horse, and one cow therein died immediately from suffocation. After the fire had been extinguished, the car was cut out of the train and carried to the stock pens at the company's nearest station, where the employees of the company unloaded the live stock. On the next day another horse died, and all the live stock not dead were so badly injured they were unable to eat or be transported, and were never delivered by the company to plaintiff.

Numerous assignments of error have been made by defendant, but its counsel in their brief have divided all the questions for review into five different propositions, and we shall try to discuss them in the order in which they appear in their brief. The contract, which is designated thereon in bold type, "Live Stock Contract," provides that the shipper shall assume all risk and expense of feeding, watering, bedding, and otherwise caring for the live stock covered by the contract while in the cars, yards, pens, or elsewhere, and shall load and unload the same at his own expense and risk, and that the shipper himself, or some person representing him, shall have free transportation on the train for the purpose of discharging the obligations imposed upon him by the contract. An agent of the shipper did accompany the stock until the fire occurred. Counsel for defendant insists that the burden of proof was upon plaintiff to show that the stock was injured from some cause, liability for which the company was not exempted from by the terms of the contract—that is, that the injury or loss occurred from the negligence of the railway company—and insists that there is no evidence reasonably tending to establish such fact, and that defendant's demurrer to the evidence should have been sustained.

*C. O. Blake, H. B. Low, M. A. Low,* and *Robberts & Curran,* for plaintiff in error.—On validity of stipulations as to maximum valuation: *Lawrence Hart v. Pa. R. Co.,* 112 U. S. 331; *Adair v. Railway Co.* (Minn.) 54 N. W. 1513; *Nelson v. Railway Co.*

(Mont.) 72 Pac. 649; *Adams Express Co. v. Carnahan* (Ind. App.) 64 N. E. 647; *Graves v. Express Co.* (Mass.) 57 N. E. 463; *Ullman v. Railway Co.* (Wis.) 88 N. W. 43.

W. C. *Tetirick* and *Arthur A. Stull,* for defendant in error. No copy of brief reached the reporter.

HAYES, J. (after stating the facts as above). The first point of contention between counsel is as to who has upon him the burden of proving the cause of the injury to the live stock. But it is unnecessary to determine this question; for, whether the burden be upon plaintiff to show negligence of the company, or upon the company to exonerate itself from liability, we think there is sufficient evidence in the record to authorize submitting the case to the jury. We do not concur with defendant's contention that there is no evidence fairly and reasonably tending to establish that the loss occurred from its negligence, and that its demurrer to the evidence should have been sustained. It is true there is no direct and positive evidence as to the origin of the fire, but the law does not require direct and positive evidence in order to make out a *prima facie* case. The fire occurred in the end of the car next to the engine, and in which was the open door. It had been exposed to no other fire than that of the engine since its departure from Stover. The hay in the bottom was burned, and the roof and walls were scorched and smoked. The cause of the fire under these circumstances was a question for the jury, as was likewise the question whether the railway company had been negligent in furnishing a car containing an odor so strong and offensive that it rendered an opening necessary for ventilation, and whether the company had been negligent in placing the car with the end in which was the open door next to the engine, where it would be exposed to the sparks and cinders that might escape therefrom.

The fire was first discovered while the train was in motion, and about two miles from the station of Windsor. Plaintiff's agent, who accompanied the live stock, was at that time in the caboose, and not in the car with the stock. There is evidence

tending to show that if he had been in the car with the stock, the fire would not have occurred, and defendant insists that his not being there was negligence and the proximate cause of the injury to the live stock, and therefore defeats plaintiff's right to recover. But the contract provides that the person in charge of the live stock shall remain seated in the caboose car attached to the train while the train is in motion. The railway company cannot insist that the person in charge of the stock should have done that which the contract specifically prohibited him from doing, or contend that his failure to do that which the contract did not permit him to do was negligence on his part.

The contract expressly provides that, in consideration of the mutual covenants and conditions therein contained, the railway company will transport for plaintiff the property described in the contract at a specified rate; said rate being less than the rate charged for transporting the same at carrier's risk, for which reduced rate and other considerations it is mutually agreed between the parties thereto as follows: Then follow various stipulations, the eighth of which is:

"That in case of total loss of any of the live stock covered by this contract from any cause for which the first party may be liable, payment will be made therefor on the basis of the actual cash value at the time and place of shipment, but in no case to exceed $100.00 for each horse, pony, gelding, mare, or stallion, mule, or jack * * * $30.00 for each cow * * * and in case of injury or partial loss, the amount of damage claimed shall not exceed in the same proportion."

The court instructed the jury that, if they found for the plaintiff, they should find for him only such amount as they found to be the reasonable market value of the property at Stover at the time of shipment, not exceeding the limitations in the contract, unless they found from the evidence that the loss was occasioned by the gross negligence or wilful wrong of the defendant or its agents, in which event they should find for him the reasonable market value of the property at Stover at the time of shipment. The verdict of the jury was for the full market value of the property, and by a finding in answer to a special interrogatory they

found that the company was guilty of gross negligence in placing the car next to the engine. Defendant contends that this instruction, and the verdict of the jury for the full value of the property, is contrary to the law. Plaintiff, on the other hand, insists that the instruction of the court was more favorable to defendant than it was entitled to; that said provision of the contract is void, for the reason that it undertakes to limit the liability of the railway company for damages caused by its own negligence, and for the further reason that it is in contravention of section 706, Wilson's Rev. & Ann. St. 1903.

A contract at common law that attempts to exempt a common carrier from liability for its own negligence is void, for the reason that such contracts tend to encourage negligence, and are against public policy. But the weight of American authorities hold that a contract providing that the carrier assumes liability on the property transported only to the extent of the valuation agreed in the contract, where the contract is fairly made by the shipper, is reasonable and just, and the rate of freight charged is based on the valuation, is not a contract limiting the liability of the carrier for its own negligence, and is valid. *Hart v. Pennsylvania Ry. Co.*, 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717, is a leading case on this question. In that case the court says:

"The limitation as to value has no tendency to exempt from liability for negligence. It does not induce want of care. It exacts from the carrier the measure of care due to the value agreed on. The carrier is bound to respond in that value for negligence. The compensation for carriage is based on that value. The shipper is estopped from saying that the value is greater. The articles have no greater value, for the purposes of the contract of transportation, between the parties to that contract. The carrier must respond for negligence up to that value. It is just and reasonable that such a contract, fairly entered into, and where there is no deceit practiced on the shipper, should be upheld. There is no violation of public policy. On the contrary, it would be unjust and unreasonable, and would be repugnant to the soundest principles of fair dealing and of the freedom of contracting, and thus in conflict with public policy, if a shipper should be

allowed to reap the benefit of the contract if there is no loss, and to repudiate it in case of loss."

In 1 Hutchinson on Carriers (3d Ed.) p. 443, it is said:

"The rule is well settled that the carrier, in order that he may exercise a degree of care and attention commensurate with the risk assumed, is entitled to be informed of the value of the goods intrusted to him for transportation. For the purpose, therefore, of securing such 'information, and of establishing a basis upon which to compute his charges, the carrier may, by a contract fairly and honestly entered into with the owner of the goods, stipulate, either that the goods are of a certain value, or that their value does not exceed a certain sum, and that, in the event of loss, his liability shall not exceed the sum at which the goods are valued; and, when fairly entered into with a view to placing a *bona fide* value on the goods, the contract will be conclusive on the owner, and the carrier will not be liable for a greater sum than that at which the goods are valued, although his own misconduct has caused the loss."

Some of the courts have made a distinction between contracts in which the value is definitely fixed and agreed upon and those contracts in which it is agreed that the value does not exceed a certain amount. But, as was said in *Alair v. Northern Pac. Ry. Co.*, 53 Minn. 160, 54 N. W. 1072, 19 L. R. A. 764, 39 Am. St. Rep. 588, we are unable to see any difference between these two different classes of contracts. See, also, *Ullman v. Chicago & N. W. Ry. Co.*, 112 Wis. 150, 88 N. W. 41, 88 Am. St. Rep. 949; 1 Hutchinson on Carriers (3d Ed.) pp. 443-447, and authorities there cited. There can be no reason why public policy should permit a shipper by special contract to stipulate the valuation of his property at a fixed amount, and agree that such valuation shall be the limit of the carrier's liability in event of loss, and at the same time prohibit such shipper from fixing by stipulation in his contract the maximum value of his property, upon which maximum valuation the rate charged by the carrier is made, under the agreement that the limit of its liability shall be the maximum valuation stated in the contract. The purpose of such contracts is to furnish to the carrier definite information as to the value of the property it conveys in order that it may know the re-

sponsibility it undertakes in conveying the property, and that it may exercise that degree of care which the character of the property and the responsibility of its undertaking require. Often many items of property of the same class are of very great different values, and it would be difficult to state a specific value on such items of property. But the parties may between themselves agree that no item of property exceeds in valuation a stated amount, which amount shall form the basis for fixing the rate. In the case at bar the parties have stipulated, as we construe the contract, that in case of loss from any cause for which the carrier is liable, he shall make payment therefor upon the basis of the actual cash value of the property lost at the time and place of shipment, which value in no event, for any item of property, shall exceed the amount stipulated in the contract. If the property is of less value than the amount stipulated in the contract, then its cash value at the time and place of shipment is the measure of the carrier's liability. That it may be provided that the value of the property at the time and place of shipment shall determine the carrier's liability is well supported by the authorities. *Pierce v. Southern Pac. Co.,* 120 Cal. 156, 47 Pac. 874, 52 Pac. 302, 40 L. R. A. 350; *Louisville & N. R. R. Co. v. Oden,* 80 Ala. 38; *Rogan et al. v. Wabash Ry. Co.,* 51 Mo. App. 665; 4 Elliott on Railroads (2d Ed.) par. 1510 (a). We conclude that the contract fixing the maximum valuation of the property in case of loss is valid, and determines the amount that the plaintiff is entitled to recover, unless such provision is void as to any liability of the railway company resulting from its gross negligence.

Section 706, Wilson's Rev. & Ann. St. 1903, reads as follows:

"A common carrier cannot be exonerated by any agreement made in anticipation thereof from liability from the gross negligence, fraud or wilful wrong, of himself or his servants."

The effect of this provision of the statute upon the common-law rule prohibiting common carriers from exempting themselves by contract from liability resulting from their own negligence was considered in *Blackwell Mill & Elevator Co. v. Western U.*

*Tel. Co.,* 17 Okla. 376, 89 Pac. .235. In that case it was held that said section did not change the common-law rule, and that such carrier cannot by contract exempt itself from liability or loss brought about by its ordinary negligence: in other words, that this provision of the statute is only declaratory of the rule at common law as to gross negligence, and does not in any way change the rule as to ordinary negligence. No consideration, however, was given by the court in that case to the effect of the statute upon the question now under consideration. This provision of the statutes is to be found in the North Dakota and California statutes, where it has been considered by the highest appellate courts of those states.

In *Donlon Bros. v. Southern Pac. Ry. Co.,* 151 Cal. 763, 91 Pac. 603, 11 L. R. A. (N. S.) 811, the Supreme Court of California, discussing this same section of its statutes, said:

"The prohibition of the common law against a carrier limiting his liability for any kind of negligence is declared in this state by section 2175 [Civil Code] only to apply to the limitation for gross negligence. But in so declaring our statute has added nothing to the restrictive force of the common-law rule. Declaring the same rule as it existed at common law, and. nothing more, the section should not be construed as restricting the right of contract to any narrower compass than the common law restricted it. In fact section 2175, as it is but a declaration of that rule as far as it applies to contracts limiting liability for gross negligence, should not be interpreted as restricting the right of contract, as to an agreed valuation of property for the purpose of fixing responsibility, any further than it was restricted under the common-law rule. At common law such agreed valuation was not considered a limitation of liability for either ordinary or gross negligence. In jurisdictions in this country where the common-law rule obtains it is the prevailing doctrine that there is a wide distinction between a contract by a carrier providing for exemption from liability for its negligence and a contract fairly entered into, whereby, in consideration of a reduced rate of compensation for the transportation, the shipper and carrier agree upon a fixed valuation therefor, under which the responsibility of the carrier in case of loss shall be measured."

The case clearly draws the distinction which the decided

weight of authorities makes as between a contract exempting the carrier from liability for its own negligence and a contract fixing the valuation of the property which shall be the measure of the company's liability in case of loss, the former of which contracts is forbidden, but the latter of which is permitted, and, after making this distinction, holds that the statute under consideration (the language of which is the same as section 706, *supra,* of our statutes) does not prohibit contracts fixing the valuation of property, which valuation is the limit of liability for loss resulting from gross negligence.  The doctrine of the California case has recently received the approval of the Supreme Court of North Dakota in *Hanson v. Great Northern Ry. Co.,* 121 N. W. 78, although the court did not in that case directly pass upon the question.

Under the rule of the California case which we approve and follow, the instruction of the court as to the measure of the plaintiff's damages was error.  Whether such a provision in a contract would be valid as to a liability of the carrier resulting from the willful wrong or fraud of itself or servants was not involved in the California case, and is not involved in this case.

The contract contains a stipulation that, under no circumstances shall the defendant, the Chicago, Rock Island & Pacific Railway Company, be held liable for any injury to, or loss of, the property transported under said contract happening beyond its own line, and, in the event of injury or loss to the stock, only the carrier on whose line the injury or loss actually occurs shall be liable.  Defendant insists that the evidence in this case established that the loss of plaintiff's stock occurred on the St. Louis, Kansas City & Colorado Railway Company's line of railway, and not upon its line of railway.  The jury, by a special finding of fact, found that the injury and loss occurred on the railway owned by the St. Louis, Kansas City & Colorado Railway Company, but operated by defendant.  The evidence upon this question is voluminous.  Almost all of the evidence tending to establish that the line of railway on which the injury occurred was operated by defendant was circumstantial.  There is much evi-

dence to the contrary, but we think that, under the state of the evidence, it was for the jury to determine by which company the road was operated; and, there being evidence fairly tending to establish the fact that defendant, at the time of the shipment of plaintiff's property, was operating the line of railway upon which the injury occurred, the court should not disturb the verdict.

Defendant insists that *Peterson v. C., R. I. & P. Ry. Co., 205 U. S. 364, 27 Sup. Ct. 513, 51 L. Ed. 841,* is in point upon this question, and is controlling. In that case the court held that "the ownership by a foreign railway company of a controlling interest in the stock of a domestic railway company which retains its own officers, has property of its own, and is responsible for its contracts to persons with whom it deals, does not make the foreign corporation liable to service of process within the state, on the theory that it is doing business therein through the agency of the domestic corporation." In that case the facts as to the relation between the foreign corporation and the domestic corporation were somewhat similar to the facts in the case at bar as to the relation between defendant and the St. Louis, Kansas City & Colorado Railway Company. But in that case the line of railway of the domestic company was operated and managed by its own officers and employees, and it was not contended that it was operated by the foreign corporation, except as it was operated by the domestic corporation as the agent of the foreign corporation. In the case at bar it is contended and the jury has found that, while the railway upon which the injury or loss occurred was owned by the St. Louis, Kansas City & Colorado Railway Company, it was operated by the defendant company. It is immaterial that some other company than the defendant owned the railway upon which the loss occurred if defendant was at that time operating it, and undertook to transport plaintiff's property over it.

The error of the court in instructing the jury as to the measure of plaintiff's damages does not necessarily require that the judgment be reversed and a new trial granted. Such instruction could in no way affect the verdict of the jury prejudicially to de-

fendant, except that, under it, the jury was permitted to return a verdict for a larger amount of damages than under the law plaintiff was entitled to. There is nothing to indicate that the excessive verdict was due to passion or prejudice, and the excessive amount can be accurately determined. All the evidence as to the value of the live stock shows that each animal was worth, at the time and place of shipment, in excess of the maximum value fixed in the contract, and plaintiff, therefore, was entitled to recover an amount equal to the maximum value of all the live stock fixed by the contract, the total amount of which is $720, and interest thereon at 7 per cent. per annum from November 1, 1904, until the date of trial. Where an improper element of damages has been allowed under an erroneous instruction, if the amount thereof can be segregated from the verdict, the judgment will not be reversed and a new trial granted, unless plaintiff refuses to remit the excessive part of the verdict. *Ibers et al. v. O'Donnell,* 25 Mo. App. 120; *Mackey v. Olssen,* 12 Or. 429, 8 Pac. 357; *Hazard Powder Co. v. Volger,* 58 Fed. 152, 7 C. C. A. 130. The verdict was for $970, which was afterwards remitted to $960, with interest at 7 per cent. per annum from November 1, 1904, until the date of the trial, which was April 27, 1907, and judgment was rendered for the sum of $1,127.06.

The cause therefore will be remanded, with directions to the trial court to set aside the judgment; and, if plaintiff shall, within 30 days after the date of the mandate, file in the trial court his *remittitur* remitting the sum of $240 from the verdict, judgment shall be entered in favor of plaintiff for $720 and interest thereon at 7 per cent. per annum from November 1, 1904, and for costs. If plaintiff refuses to enter such *remittitur,* a new trial will have to be granted; the costs to be divided equally between the parties.

All the Justices concur.