## MISSOURI, K. & T. RY. CO. v. HANCOCK.

No. 385. Opinion Filed May 10, 1910.

(109 Pac. 220.)

1. CARRIERS—Live Stock—Maximum Valuation—Validity of Contract. A special contract executed between a carrier and a shipper in consideration of a reduced freight rate, providing that, in case of a total loss of any of the live stock covered by the contract, the liability of the carrier shall not exceed a maximum valuation of the live stock stipulated in the contract, is not a contract attempting to exempt the carrier from liability arising from its own negligence; and where the contract is reasonable and just, and has been fairly entered into by the shipper, the same will be upheld by the court as a proper and lawful manner of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives.

2. CARRIERS—Live Stock—Care Required—Mares in Foal. In the absence of notice or of facts sufficient to charge the carrier with the knowledge that the animals shipped were with foal, such condition should be regarded as a hidden or concealed defect and the carrier in handling such shipment should not be charged with a degree of care or duty greater than that ordinarily exercised in handling mares without foal.

3. CARRIERS—Limit of Time for Suing—Validity of Contract prior to Statehood. Since prior to statehood the statutes did not forbid the making of a contract prescribing a time after which a liability incurred by a common carrier should be enforced by suit, the only limitation on the validity of such a contract, when made on sufficient consideration, was that it be reasonable as to the period of time stipulated. The time stipulated in the special shipping contract involved herein, which was executed prior to statehood to wit, 90 days, is held to be reasonable.

(Syllabus by the Court.)

*Error from Craig County Court; Theo. D. B. Frear, Judge.*

Action by T. J. Hancock against the Missouri, Kansas & Texas Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*Clifford L. Jackson, W. R. Allen,* and *Fogle & Parks,* for plaintiff in error.

*Seymour Riddle,* for defendant in error.

Briefs did not reach the reporter.

KANE, J. This case involves two causes of action which arose prior to statehood. The first paragraph of the petition alleges, in substance, that said defendant, its agents and servants, so carelessly and negligently handled said stock in transportation that by and through the carelessness, negligence, and default of said defendant, its agents and servants, two of said mares were killed, two of said horses were bruised, crippled, and rendered of no value; and that four other mares were bruised, damaged, hurt, and rendered almost worthless; that each and all of said horses and mares were so injured, bruised, and killed on account of the carelessness and negligence of the defendant company in the transportation of said horses; that at the time defendant received said horses and mares for shipment he had advertised a sale of said horses and mares to take place at Welch, Okla., and had gone to great expense and trouble in advertising and making preparations for said sale, and had purchased said horses and mares on the market at Kansas City, Mo., for the purpose and with the intention of selling them at said sale; that on account of the condition of said horses and mares when they reached Welch, Okla., the plaintiff could not offer them for sale for the reason that they were bruised and jammed and crippled; that plaintiff was put to a great expense in feeding, nursing, and caring for the said horses and mares so injured, and has been at great expense in securing the services of a veterinary surgeon in the treatment of said horses and mares, and has been damaged in the sum of $660.

The second paragraph of the petition alleges, in substance,

that the company received from the plaintiff 76 head of cattle for shipment from the town of Welch, Okla., to Kansas City, Mo.; that said cattle were all in good marketable condition; that the defendant carelessly and negligently transported said cattle in this: It delayed transportation thereof unnecessarily and unreasonably, and did not deliver said cattle at Kansas City, Mo., until the 8th day of November, 1907, at 5:05 p. m., which was too late for the market on that date; that, on account of said delay in the shipment of said cattle, the plaintiff was compelled to lay out and expend the sum of $3.60 for extra feed at Kansas City, Mo., and that said cattle on account of the delay in said shipment, as above stated, could not be sold and were not sold until the 9th day of November, 1907; that on the 9th day of November, 1907, the market price for said cattle was 15 cents per hundred less than the price for said cattle on the 8th day of November, 1907; that, if defendant had shipped and transported said cattle with reasonable diligence, said cattle would have reached Kansas City, Mo., in the morning of November 8, 1907, in time for market on that date; that, on account of the decline in said market, plaintiff suffered a loss in the sum of $141.02; that on account of the delay in the shipment of said cattle, as herein alleged, plaintiff suffered an extra shrinkage in said cattle of 3,800 pounds, to his damage in the sum of $193.80.

The answer of the defendant contained a general denial, and further allegations to the effect that the defendant received from the plaintiff at its station at Kansas City, Mo., for shipment, 25 head of horses to be shipped to Welch, Okla.; that same were received and forwarded under and by virtue of the terms of a written contract, a copy of which is hereto attached, marked "Exhibit A," and made a part of this answer. And, further answering, it was alleged, in substance, that the defendant received from the plaintiff at its station at Welch, Okla., for shipment to Kansas City, Mo., a number of cattle. Defendant states that said cattle were received and forwarded under and by virtue of the terms of a written contract of shipment, a copy of which is hereto attached.

marked "Exhibit B," and made a part of this answer. As the exhibits referred to are the same as certain special live stock contracts heretofore construed by this court in cases herein cited, it will not be necessary to set them out in full.

The reply of the plaintiff consisted of a general denial and special denials of the execution of the written contracts referred to in the answer.

There was a verdict for the plaintiff on both causes of action, upon which judgment was duly entered, to reverse which this proceeding in error was commenced.

On the first cause of action there was evidence tending to show that some of the mares injured were with foal at the time of their shipment and aborted while in transit. Counsel for plaintiff in error contend that the railway company is not liable for the injury or death of any of the mares by reason of their pregnancy unless it had notice of or knowledge thereof, and that it was error for the court to refuse the instruction on that question requested at the trial.

The remaining contention, so far as this cause of action is concerned, is that the court should have instructed the jury that the limitation of $100 per head for the loss of or injury of the horses upon the agreed valuation of that amount as shown by the shipping contract was binding, and that the defendant in error could not in any event recover more than that amount for any horses killed or injured. The contract involved in the case of *C., R. I. & P. Ry. Co. v. Wehrman,* 25 Okla. 147, 105 Pac. 328, was identical with the contract in the case at bar. Construing the valuation clause therein, this court held that:

"A special contract executed between a carrier and a shipper in consideration of a reduced freight rate, providing that, in case of total loss of any of the live stock covered by the contract, the liability of the carrier shall not exceed a maximum valuation of the live stock stipulated in the contract, is not a contract attempting to exempt the carrier from liability arising from its own negligence; and, where the contract is reasonable and just, and has been fairly entered into by the shipper, the same will be

Vol. 26—17

upheld by the court as a proper and lawful manner of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives."

It was further held that:

"Such a contract is not in violation of section 706, Wilson's Rev. & Ann. St. 1903, forbidding a common carrier to contract to exonerate itself from liability for gross negligence."

If this was the only error complained of, we would follow the rule laid down in *C., R. I. & P. Ry. Co. v. Wehrman, supra,* and remand the first cause of action, with directions to the trial court to set aside the judgment and give the plaintiff an opportunity to file a *remittitur,* but we are of the opinion that the defendant was entitled to an instruction covering the first point raised. Counsel for defendant in error seems to concede this, but insists that the instruction asked did not state the law correctly. This, to our mind, is not a sufficient justification for refusing an instruction on that question. In *Missouri Pac. Ry. Co. v. Fagan et al.* (Tex. Civ. App.) 27 S. W. 887, Mr. Chief Justice Fisher, after quoting several instructions requested by the defendant upon the duty which a carrier owes to animals in foal, says:

"The charge first quoted in the language in which it was asked is subject to criticism; but the principle it presents is a part of the law of the case, and should have been given to the jury. It was sufficient to call the trial court's attention to the question presented, and, being sufficient for this purpose, the court should have so framed and given a charge presenting in a legal way that issue to the jury. The degree of duty and care charged to the appellant in safely transporting and handling the shipment is to some extent measurable by the character of the property shipped and its condition at the time. If the mares shipped were with foal, and this fact was not known to the carrier, and it could not have been ascertained or discovered by the exercise of reasonable diligence at the time of the contract of shipment, or before they received the injuries complained of, and such condition would, in order to preserve the stock from injury, require of the carrier a degree of caution and care greater than ordinarily exercised in the shipment of horses or mares not with foal, the carrier should not, under such circumstances, be held liable for depreciation in value of the animals that resulted from the loss of the foal. In

the absence of notice or of facts sufficient to charge the carrier with the knowledge that the animals shipped were with foal, such condition should be regarded as a hidden or concealed defect, and the carrier in handling such shipment should not be charged with a degree of care or duty greater than that ordinarily exercised in handling mares without foal."

See, also, on the same subject, 4 Elliott on Railroads (2d Ed.) par. 1549-A.

On the second cause of action, counsel for plaintiff in error insists that the suit for damages to the cattle was not brought within 90 days from the happening of the alleged injury, and should therefore have been dismissed, because it is stipulated in the contract of shipment that the shipper's failure to bring suit within that period shall bar his right to recover. On this point the evidence shows that the shipment of cattle moved on the 7th day of November, 1907, and that this action was commenced on the 7th day of March, 1908, a period of four months having elapsed. Whilst the execution of the contract was put in issue by the pleadings, we think that the evidence clearly establishes its execution by the railway company and Mr. A. A. Coutney, the agent of said shipper. Counsel for defendant in error does not seriously contend otherwise, but argues in his brief:

"The defendant in error believes that all these provisions are unreasonable and void. That a common carrier can impose no such restrictions, rules, or regulations upon a shipper and that statutes as to limitations cannot be changed in any such manner nor for any such purpose."

The validity of these contracts has been upheld by this court in a good many cases. *St. L. & S. F. R. R. Co. v. Phillips,* 17 Okla. 264, 87 Pac. 470; *St. L. & S. F. R. R. Co. v. Copeland,* 23 Okla. 837, 102 Pac. 104; *Patterson v. M. K. & T. Ry. Co.,* 24 Okla. 747, 104 Pac. 31; *M., K. & T. Ry. Co. v. Davis,* 24 Okla. 677, 104 Pac. 34; *St. L. & S. F. R. R. Co. v. Cake,* 25 Okla. 227, 105 Pac. 322; *C., R. I. & P. Ry. Co. v. Wehrman,* 25 Okla. 147, 105 Pac. 328. In *M., K. & T. Ry. Co. v. Davis, supra,* the second paragraph of the syllabus reads as follows:

"The contract provides that no suit shall be brought against

the carrier after the lapse of 90 days after the happening of the injuries complained of, and further provides that no agent of the carrier shall have any authority to modify, waive, or amend any of the provisions of the contract. The station agent at the destination of the mules, who was not shown to have any authority to adjust and settle claims for damages, and who did not represent that he had such authority, was without power to waive the provisions of the contract requiring suit to be brought within 90 days by advising the shipper not to sue, that the company always preferred to settle that class of claims."

See, also, *G., C. & S. F. Ry. Co. v. Trawick,* 68 Tex. 314, 4. S. W. 567, 2 Am. St. Rep. 494, wherein it is held:

"Since the statutes do not forbid the making of a contract prescribing a time after which a fixed liability incurred by a common carrier shall not be enforced by suit, the only limitation on the validity of such a contract, when made on sufficient consideration, is that it be reasonable as to the period of time stipulated."

In the other cases above referred to other clauses of identical stock shipping contracts were under discussion, and in all of them the validity of such clauses was upheld. As the second cause of action was not commenced within the time limit by the contract, it must also be reversed.

It is therefore ordered that this case be reversed and remanded, with directions to grant a new trial.

All the Justices concur.