# CIRCUIT COURT OF BALTIMORE CITY.

Filed July 15, 1912.

WILLIAM B. D. PENNIMAN, ET AL.,
VS.
JOHN H. TRAUTFELTER, ET AL.

*Geo. Stewart Brown* and *Geo. Dobbin Penniman* for plaintiffs.
*Israel B. Brodie* and *Harry B. Wolf* for defendants.

BOND, J.—

The house which complainants own, and in which they dwell, is located within the overlapping edges of two widely different classes of property development, in Baltimore. The region of the most costly residences meets there a region of small dwellings, interspersed with small shops and stores. Apparently the smaller properties are the oldest, and have not all given away to the more costly development. The less valuable property has been taken up here and there for automobile garages, small stores and shops, and opposite the complainant's house is a rug-weaving establishment on a small scale. All of the buildings are of light construction, the two described in the evidence having each 9 inch side walls.

The complainants' house, 1122 Cathedral street, is the southernmost one of a group of four high-class residences supposed to be about 50 years old. The building adjoining on the south, No. 1120, has for many years been devoted to the uses of a grocery store, rug-weaving and other quiet occupations. In the year 1911, the defendants, or some of them, leased the latter building, No. 1120, and set up in it a shop for repairing machinery of all kinds, and welding metals. To equip it they installed a welding machine, consisting of an acetylene gas generator placed in the cellar, from which the gas is conducted to a torch above ground, in a wooden shed back of the building. And on the third floor they installed several machines for tooling metal pieces in various ways, together with a 3 horsepower electric dynamo to furnish power. The lower floors are used for storage and workrooms.

It appears that the plant was installed in violation of the building laws of Baltimore city, requiring, as they do, that a building carrying machinery under such conditions shall have walls of 17 inches thickness. And the building laws appear to have been violated also in the construction of the wooden shed over the welding torch, and in other respects. These violations of municipal ordinances form a subject of complaint upon which the writ of injunction is prayed.

The writ is prayed, further, to restrain the new use as a nuisance by reason of noises and vibrations transmitted to the complainants' house, and of danger from explosion of acetylene gas, especially as it is generated and used on these premises. The principles governing the controversy I take to be these:

If a municipal ordinance or building law is violated, as testified here, no individual may bring an action to correct that wrong merely on belief of the public of which he is a member.

But an individual may have a remedy to correct an injury which he suffers, over and above the injury to the general public—the fact that the public also has an action for the public wrong having no effect on the individual's action on his special wrong.

Occupants of buildings in a city sacrifice some freedom from disturbance for the benefits of close neighborhood. And so occupants of part of a city of a special character, a manufacturing district, for instance, must accept inconveniences and disturbances reasonably appropriate to such neighborhood.

But the occupant of one property may not cause discomfort or damage to his neighbor by a use of the property unreasonable and inappropriate to the particular locality. If he does his act, in law, will be a nuisance. This does not mean trivial or fancied discomfort. It means sensible discomfort from the viewpoint of persons of normal sensibilities, and material damage.

In measuring the reasonableness and appropriateness of the use of property in the particular locality, the present, obvious conditions of the neighborhood are all that the court can deal with. It is not practicable to assume a future predominating use of the various properties and then test a new enterprise by that.

The determination whether a given act or condition is a nuisance being largely the result of the opposing principles that an occupant of property may make all reasonable and lawful use of his property, but that he shall not so use it as to do injury to another, the legal prohibition of that act or condition may alter the balance and permit an adjoining owner to complain of a disturbance which he might otherwise be compelled to endure. The Maryland Court of Appeals seems never to have had occasion to adopt or reject this last principle (King vs. Hamil, 97 Md., 103, 110), but it seems to conform to the majority of decisions elsewhere. (Hazard Powder Co. vs. Volger, 58 Fed., 152; Bangs vs. Dworak, 5 L. R. A. (N. S.), 493, with note; First Nat. Bank vs. Sarlis, 129 Ind., 201, 203-4).

It is settled that the remedy of injunction may be had to restrain a nuisance when the complainant cannot be adequately compensated in damages and the injury is a constantly recurring one. Woodyear vs. Schaeffer, 57 Md., 1, 11.

Such being the guiding principles, then, what facts have been shown in support of the allegations pro and con? At an early stage in the hearing, at the request of counsel for both sides, the court visited and inspected both buildings while the machinery in 1120 Cathedral street was running. At that time no vibration or noise was perceived on the first floor of No. 1122. On the second floor a tremor could be felt in the floor, the stair rails, and and open doors; and a window in the rear of the house could be heard rattling slightly. In one room budding twigs in a vase shook at times. On the third floor a vibration was more easily perceptible, but still not great. At that time no plaster had broken from the walls in any part of the house. There was another inspection, later by witnesses for the defendant, and these testified to having found no greater vibrations. Witnesses, of whose honesty and sincerity I have no doubt, however, testified that the vibrations were at times much more severe, describing them as similar to the vibrations of a steamboat under way. Sometimes, they say, the vibration of a door or stair would be visible. Ornaments would sometimes tinkle against each other, or on their bases.

Reading and sleeping were disturbed while the machinery was in operation. These witnesses also testify to a low hum heard in neighboring houses, and to an occasional loud clang as of hammering metal.

I think I must accept this as a true statement of the vibrations and noises transmitted from the shop to the complainants' premises.

Additional evidence offered since the hearing first closed shows that plaster has broken away from the ceiling of the third floor of complainants' house, next the wall of the shop. As evidence of vibration this is contested by the defendants. They have produced evidence that the plaster was old and weakened. Some of these witnesses say that while originally well made it has been undergoing progressive disintegration as a result of wetting caused by roof leaks in the past. All of these witnesses except one, agree that vibrations from the adjoining house might have been the immediate cause of the fall of plaster. And it appears, too, that the condition described, as it was prior to the fall, was not an uncommon condition in houses of even less age. Witnesses for the complainants ascribe the fall to the vibrations alone, and deny the possibility of disintegration of plaster, except perhaps while it is actually wet. I am persuaded that the fall of the plaster was due to the vibrations from the machinery. Although it was old plaster it appears to have been in a condition frequently met with and to be expected in old houses; and the complainants were entitled, I think, to have it left undisturbed by the defendants, for better or for worse, as long as it would last.

And here the connection between the age of the house and the vibrations from the next-door machinery may well be dealt with. The defendants urge that the house, by reason of its age, is less staunch and more easily vibrated than a more recently built house would be. The stair rail in which vibrations are perceptible is loosely affixed to the floor. The floors themselves will shake under a heavy tread, and, especially, will shake when heavy wagons or automobile trucks pass in the street. But even so, these conditions are not extraordinary, and do not put the complainants beyond the protection of the law in the peaceful enjoyment of their property. It is a house such as people may, and commonly do, live in, and such as a new disturbing element in the neighborhood must expect to deal with. There is no distinction in the law of nuisance, so far as I can see, between the ages and conditions of the premises affected. The fact of age and condition, I think, is of value only in measuring the amount of disturbance.

For measuring the amount of such disturbance by vibrations and noises, it has also been urged that the complainants and many of the witnesses produced by them are people of over-delicate sensibilities, that they complain of disturbances which would not disturb at all people of ordinary sensibilities. But these witnesses did not appear to be abnormally sensitive in this respect. There was no testimony that they were, and the appearance of most of them leads me to believe the contrary. I am unable to agree that over-delicate sensibilities within the meaning of the rule frequently announced in measuring discomfort caused by alleged nuisances, may be identified with any particular social class.

The vibrations and noises complained of and testified to in this case, are, I think, such as must cause material discomfort and injury to people of normal sensibilities, and damage to their property.

According to the testimony the acetylene gas generator is somewhat crudely constructed and installed, but its chief dangers would appear to come, if they come at all, from carelessness in its use and management. Acetylene gas appears to be one of the most easily exploded substances when mixed with air; and it will ignite in its pure state at low temperature and pressure. Appliances for its use must, therefore, be constructed with care and used with great care. This generating machine is so constructed as to produce an excessive pressure of gas by easily possible accident, and yet it has no means of ready relief for such pressure. Again, it is confined in a cellar where a dangerous mixture of air and escaping gas may be produced; and the avenue of escape through a rear cellar window brings the torch and the gas into dangerous proximity. And the generator is mounted on light supports. An upset of the tank with the carbide suspended in it would cause a prompt

generation of an excessive amount of gas. And an explosion, especially in such a lightly constructed building, might, naturally, be highly destructive to the adjoining houses. But even if these structural objections be met the generation of the gas and use of the torch require skill and care, and subject the adjoining properties to the risk of injury from accident or carelessness.

Do these conditions constitute a nuisance which may be enjoined at the suit of the complainants? I think they do.

The neighborhood is not one in which a resident is in any degree an intruder. The vibrations of a machine shop and the dangers of an acetylene welder form a distinctively new element in that neighborhood, and cannot be said to come within the disadvantages of locality which the complainants must have accepted by living where they do. Lurssen vs. Lloyd, 76 Md., 360. It is questionable, indeed, whether the continual vibration of a neighbor's building can be justified in any locality. Here we have, moreover, the fact that the operation of a machine shop in this building is prohibited by law, and, that being true, I think there can be no doubt of the propriety of granting the writ to restrain it. Possibly walls of statutory thickness might prevent the transmission of the vibrations objected to. But, however that may be, I have concluded the writ should be granted to restrain the present condition, even irrespective of the prohibition of the ordinances.

The operation of the acetylene welding machine as at present should also be enjoined.

The complainants have urged, too, that the writ issue to restrain other conditions on the defendants' premises. They object to the maintenance of a wooden shed there, to the absence of an enclosure around the elevator shaft, and to the cutting down of the sidewalk for the easier passage of vehicles. All these conditions are in supposed violation of the building laws of Baltimore city, specifically referred to in the testimony. But assuming that they are so, the complainants do not appear to be in a position to remedy such wrongs. The shed, I think, they may complain of in conjunction with the use of the acetylene welder. But the other two conditions bring no such separate special injury to them as to support their suit.

A decree will be signed, therefore, directing the issue of the writ of injunction to restrain the following acts and conditions:

The operation of the machinery now in the defendants' premises, or any machinery or appliances therein, under such conditions that vibrations, or the constant noise of operation or loud hammering may reach into the complainants' premises.

The maintenance or use of the acetylene welding apparatus on the premises, or the maintenance or use of any acetylene welding apparatus that does not afford ready relief into the open air for excessive pressure of gas, and waste or escaping gas, and does not avoid the use and burning of the gas in inflammable surroundings such as wooden walls or sheds.

The writ will not be issued against the owners of the premises, who appear not to have participated in the creation of the nuisance and will not be issued against the defendant, John H. Trautfelter, as all the testimony shows he has now no connection with the business from which the nuisance arises. The issue of permits by the Building Inspector's office in the name of John H. Trautfelter appears not to have been in exact accord with the facts. The bill as to those defendants will be dismissed with costs.

Against the remaining defendants the writ will issue as stated.