## ST. LOUIS & S. F. R. CO. v. RINKLE.

No. 2308.    Opinion Filed June 19, 1913.

(133 Pac. 199.)

CARRIERS—Shipment Contract—Construction—Exemption from Lia-
bility—Validity. A special contract executed between a car-
rier and a shipper, in consideration of a reduced freight rate,
providing that, in case of total loss of any of the live stock cov-
ered by the contract, the liability of the carrier shall not ex-
ceed a maximum valuation of the live stock stipulated in the
contract is not a contract attempting to exempt the carrier
from liability arising from its own negligence; and where the
contract is reasonable and just, and has been fairly entered
into by the shipper, the same will be upheld by the court as a
proper and lawful manner of securing a due proportion between
the amount for which the carrier may be responsible and the
freight he receives.

(Syllabus by Brewer, C.)

*Error from County Court, Tillman County;*
*T. E. Campbell, Judge.*

Action by J. B. Rinkle against the St. Louis & San Fran-
cisco Railroad Company, a corporation. Judgment for plaintiff,
and defendant brings error. Reversed and remanded for a new
trial.

*W. F. Evans, R. A. Kleinschmidt,* and *J. H. Grant,* for
plaintiff in error.

*Mounts & Davis,* for defendant in error.

Opinion by BREWER, C. The defendant in error shipped
a car load of hogs from Davidson, Okla., to Ft. Worth, Texas,
by way of Vernon, Tex. Five head of the hogs died in the pen
at Vernon into which they had been unloaded. The shipper, as
plaintiff, sued the railroad company in the justice of the peace
court in Tillman county for $100, the alleged value of the five
dead hogs, and for $82, alleged as the damage, by reason of
shrinkage in weight, to the remainder of the hogs. The justice
of the peace having removed from the county, the parties by

agreement transferred the case to the county court, where it was tried, resulting in a verdict of $119.28.

In the petition, or bill of particulars, the plaintiff declares on his written contract of shipment, alleges its execution between himself and the railroad, makes no charge of unfairness, mistake, or fraud in its execution, and attaches a copy to and makes it part of his petition. This is followed by charges of negligence upon the part of the railroad in handling the shipment, which it is alleged caused the death of the five hogs, and the shrinkage in weight of the others.

The contract of shipment contained the following provisions:

"Notice—This company has two rates on live stock. Shippers of live stock will take notice that rates of freight and the extent of liability of the company are governed by the valuations which they place thereon. Rates of freight are on file and will be shown by agent on application.

"To the St. Louis & San Francisco Railroad Company: The undersigned offers for shipment over your road 87 head of hogs from Davidson, Okla., to Ft. Worth, each head of the estimated weight of 190 pounds, and valued at ten ($10.00) dollars per head, from Davidson to Ft. Worth, etc. * * * This application is an election on my part to avail myself of a reduced rate, by making this shipment under the following contract, limiting the liability of such carrier, instead of shipping the same at a higher rate without such limitations. [Signed] J. B. Rinkle, Owner or Shipper. * * * (10) It is further agreed that neither the company nor any carrier over whose line this stock may be transported shall be liable for any injury to said stock in any amount above the actual damage thereto, nor in any amount in excess of the value thereof as stated in the application of the shipper, which is hereto attached and made a part hereof, and in case of total loss of said stock, or any portion thereof, and claim therefor is made by the shipper against the company, or any connecting carrier, wherein the value of said stock may be material, the valuation named in said application shall be conclusive upon all parties hereto."

The court instructed the jury, over the objections of the defendant, as follows:

"You are instructed that if you believe from the evidence in this case that the plaintiff turned over to defendant as a common carrier 87 head of hogs, to be shipped from Davidson, Okla., to Ft. Worth, Tex., and if you further find from the evidence that the defendant carelessly and negligently permitted any of said hogs to die from heat or want of water while in the defendant's hands at Vernon, Tex., then you are instructed that defendant would be liable for any such hogs thus permitted to die, if any, and you will find for the plaintiff for the value of such hogs thus permitted to die, to not exceed $20 each or a total value of $100."

The giving of this instruction was reversible error. In *Chicago, R. I. & P. Ry. Co. v. Wehrman*, 25 Okla. 147, 105 Pac. 328, it is said:

"A special contract, executed between a carrier and a shipper in consideration of a reduced freight rate, providing that, in case of total loss of any of the live stock covered by the contract, the liability of the carrier shall not exceed a maximum valuation of the live stock stipulated in the contract, is not a contract attempting to exempt the carrier from liability arising from its own negligence; and where the contract is reasonable and just, and has been fairly entered into by the shipper, the same will be upheld by the court as a proper and lawful manner of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives."

See, also, *M., K. & T. Ry. Co. v. Hancock*, 26 Okla. 257-259, 109 Pac. 220; *M., K. & T. Ry. Co. v. McLaughlin*, 29 Okla. 346, 116 Pac. 811; *A., T. & S. F. Ry. Co. v. Johnson*, 29 Okla. 348, 116 Pac. 812.

Counsel urge with great earnestness that, inasmuch as the verdict was for only $119.28, and as it would have been possible for the jury under the evidence to properly award their client $82 for shrinkage, that notwithstanding he was only entitled to recover $50 for the value of the five dead hogs, and the instruction permitted the jury to allow him $100, yet that this error should be held harmless, because the aggregate of the verdict did not exceed what the jury could have properly allowed him under correct instructions. We cannot agree with this sug-

gestion. From a reading of the evidence, it is most probable that the jury allowed him the full amount claimed for the dead hogs, and that extra odd number of dollars added was an allowance for shrinkage. Under the utmost limits of the evidence, on the question of shrinkage, the damage on this item could not have exceeded $41, thus leaving in the verdict more for the value of the hogs that died than could be awarded under proper instructions.

The cause should be reversed and remanded for a new trial. By the Court: It is so ordered.