# Kestner v. Homeopathic Medical and Surgical Hospital, Appellant.

*Equity—Nuisances—Hospital—Noises—Injunction.*

1. Although a hospital is not in itself a nuisance, its management may cause it to become one; and where the existence of the nuisance is unequivocally established, the status of the hospital as a charitable institution, will not constitute any justification for

the continuance of such nuisance or interpose any defense to the abatement thereof.

2. If unusual and disturbing noises regularly or frequently emanate from a hospital building situated in close proximity to a dwelling house, and are of such a character as to affect the comfort of the household and the peace and health of the family, and are calculated to destroy the comfortable enjoyment of the home, a court of equity will prevent the continuance of such an injury.

3. In a suit in equity to enjoin defendant from conducting its hospital in such a manner as to injure plaintiffs, it appeared that plaintiffs owned a house having doors and windows facing the hospital, and from nine to twelve feet distant therefrom; that noises emanated almost daily from the hospital, consisting of shrieks, groans, moans, and yells of men and women and the cries of children, in fright or pain, which disturbed the family at meals, wakened them at night, kept them awake, made them nervous and disturbed their comfort and happiness, and that of guests invited to their house, and depreciated the value of their property. Most of the objectionable sounds came from an emergency operating room which faced plaintiffs' house. It further appeared that defendant allowed persons occupying rooms in the hospital to throw refuse upon plaintiffs' property. *Held,* the court did not err in awarding an injunction restraining defendant from using its buildings as a hospital during the continuance of the existing internal construction, and while the emergency operating room was maintained in close proximity to complainants' residence, and in restraining defendant from permitting refuse to be thrown from its building upon plaintiff's property.

*Equity practice—Amendment to bill.*

4. An amendment to a bill in equity for an injunction restraining defendant from maintaining the emergency operating room of its hospital in close proximity to complainants' dwelling house, was properly allowed where the amendment averred that the defendant allowed persons occupying rooms in its hospital to throw refuse upon plaintiffs' property, and it did not appear that the defendant was in any way prejudiced or injured by its allowance; and the fact that by reason of defendant's counsel failing to carefully examine the amendment, no answer was filed to certain facts averred therein, is immaterial where any possible prejudice to defendant in this respect was avoided by the agreement of complainants' counsel that the answer as filed should be considered as a denial of the facts contained in the amended bill.

Argued March 2, 1914. Appeal, No. 82, Jan. T., 1913,

by defendant, from decree of C. P. Berks Co., Equity Docket, 1911, No. 1056, awarding an injunction in case of George L. Kestner and Charles J. Kestner, Executors of the last Will and Testament of Elizabeth Kestner, Deceased, Elizabeth Kestner Tyack, Devisee of Elizabeth Kestner, Deceased, Elizabeth Kestner Tyack and Francis Tyack, her husband, v. The Homeopathic Medical and Surgical Hospital of Reading, Pa.  Before FELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ.  Affirmed.

Bill in equity for an injunction.  Before WAGNER, J.

The opinion of the Supreme Court states the facts.

The court on final hearing awarded an injunction. Defendant appealed.

*Errors assigned* were in dismissing exceptions to various findings of fact and law of the trial judge and the decree of the court.

*Joseph R. Dickinson,* for appellant, cited: Com. v. Hospital, 198 Pa. 270; Com. v. Charity Hospital, 199 Pa. 119; Collins v. Wayne Iron Works, 227 Pa. 326; Sparhawk v. Union Pass. Ry. Co., 54 Pa. 401; Rhodes v. Dunbar, 57 Pa. 274; McCaffrey's App., 105 Pa. 253; Straus v. Barnett, 140 Pa. 111.

*Cyrus G. Derr,* for appellee, cited: Gilford v. Babies' Hospital, 1 N. Y. Supp. 448; Deaconess Home and Hospital v. Bontjes, 69 N. E. Repr. 748.

OPINION BY MR. JUSTICE POTTER, May 18, 1914:

In this bill in equity, complainants sought to have the defendant restrained from conducting its hospital in such a manner as to unduly annoy and injure the complainants, or to impair the value of their property adjoining the hospital.  In the original bill it was averred, that complainants were the owners of a house and lot of ground in the City of Reading, and that the defendant

corporation owned adjoining ground, both north and south, thereof, and had established and maintained on the north a home for its hospital nurses, and on the south a hospital, adjacent to the residence of complainants; that the moans, shrieks, and groans of persons receiving surgical aid in the rooms of the hospital, facing complainants' house, were of such a character as to render wretched the lives of complainants, and of friends visiting them, and were such as to affect their nerves and impair their health; and that the management and carrying on of the hospital rendered complainants' house unfit for residential purposes, depreciated its value in the market and inflicted irreparable injury. Elizabeth Kestner, one of the complainants having died, the bill was amended to show that fact, and an averment was added, that defendant had annoyed and continued to annoy complainants, by permitting persons occupying rooms in the hospital, to throw refuse across the party line fence, and upon complainants' property.

The trial judge found as facts that the building of complainants was partly three storied, and partly two storied, and had twenty-one windows and nine doors facing defendant's hospital; the windows and all the doors except two, being from nine to twelve feet distant from the hospital building. The two doors were seventeen feet distant. The rooms facing the hospital included the parlor, living-room, dining-room, kitchen, pantry and summer-kitchen on the first floor, and sleeping rooms on the second floor. The hospital has forty-eight windows facing complainants' property. A wooden fence about nine feet high separates the two yards. The trial judge further found: "On the northern side of defendant's hospital facing the Kestner property were maintained, among other things, a dispensary for dressing surgical wounds and treating medical cases, an emergency operating room, private rooms for patients, women's private ward, two public wards of ten beds

each for women, a maternity ward with three beds, a delivery room with one bed, and a main operating room.

"There were from forty-five to fifty-five inmates constantly, and from one hundred and fifty, to three hundred and fifty, accident cases are treated per month, of which the public ambulance brings thirty per month.

"Prior to the filing of the plaintiff's bill, and after the filing thereof, noises came to the Kestner property from the defendant hospital, mostly from the emergency operating room; the noises consisting of shrieks, groans, moans and yells of persons, and cries of children being operated upon, or in pain from other causes; the said noises occurring at all hours, day and night, and almost daily, disturbing the family at meals in the dining-room, less than thirteen feet from the said operating room, disturbing their sleep in the bedrooms facing the area and the hospital, suddenly waking them as late as two and three o'clock in the morning, and keeping them awake; making them nervous and disturbing their comfort and happiness, and the comfort and happiness of guests invited to an entertainment in their house, and breaking up the party; and disturbing the last moments of the aged mother and making the entire family nervous, unhappy and miserable.

"From time to time, before and since the filing of the bill, articles such as cigarette stumps, orange peel, and quids of tobacco, were thrown by some one from the hospital side to and upon the Kestner property."

The trial judge also found that the hospital was equipped with the modern surgical and medical appliances, employed sufficient physicians and nurses, and used with promptness approved methods of relieving patients from pain and suffering, and of preventing the outbursts complained of. Also that shrieks and screams were of no greater frequency than those emanating from well regulated hospitals treating the same number of patients; that such noises are bound to occur wherever sick or injured persons may be, and particularly in a

hospital where a large number of persons are brought, or come, for medical and surgical treatment; and that defendant wherever possible, prevented such outcries and stopped them as quickly as possible. These findings of fact were amply supported by the evidence. Under the authorities the complainants were clearly entitled to equitable relief. Thus in 2 Joyce on Injunctions (1909) section 1068, it is said: "Hospitals are not prima facie, or per se nuisances, but they may under some circumstances become nuisances, and be subject to an injunction against their maintenance or continuance, where the evidence is clear and certain." In 1 Wood on Nuisances (3d Ed. 1893) Section 9, it is said: "The locality, the condition of the property, and the habits and tastes of those residing there, divested of any fanciful notions, or such as are directed by dainty modes and habits of living, is the test to apply in a given case (of alleged private nuisance). In the very nature of things there can be no definite or fixed standard to control every case in any locality. The question is one of reasonableness or unreasonableness in the use of property, and this is largely dependent upon the locality and its surroundings."

The law of the case is also thus summarized in 15 Am. & Eng. Ency. L. (2d Ed.) 764: "Although a hospital or asylum is not in itself a nuisance, its management may cause it to become grievously so; and where the existence of the nuisance is unequivocally established, reluctant as the courts are to interfere with eleemosynary institutions, neither the status of the hospital or asylum as a charitable organization, nor the fact that it is of statutory creation, constitute any justification for a continuance of such nuisance or interposes any defense to the abatement thereof." The same principle is also illustrated in Deaconess Home & Hospital v. Bontjes, 207 Ill. 553. The syllabus there reads: "The carrying on of a hospital in proximity to complainants' dwelling, may be enjoined as a private nuisance without a judgment at

law, where the evidence is clear and certain that the hospital, as conducted, injures the health of complainants' family and destroys their peace and comfort." In Sparhawk v. Pass. Ry. Co., 54 Pa. 401, it was held, as set forth in the syllabus, that "To make out a case of special injury to property from nuisance, something materially affecting its capacity for ordinary use and enjoyment must be shown.......Noises that distress and annoy physically and may affect health, are regarded as nuisances, and the ownership of property will not justify the use of it in that way." In Ladies' Decorative Art Club's Appeal, 10 Sad. 150, a decree of the court below awarding an injunction was affirmed by this court. In that case THAYER, P. J., said in the court below: "The law upon the subject is well settled and very plain. Where a noisy nuisance is complained of it is a question of degree and locality. If the noise is only slight, and the inconvenience merely fanciful, or such as would only be complained of by people of elegant and dainty modes of living, and inflicts no serious or substantial discomfort, a court of equity will not take cognizance of it. No one has a right to complain that his next-door neighbor plays upon a piano at reasonable hours, or of the cries of children in his neighbor's nursery, nor of any of the ordinary sounds which are commonly heard in dwelling houses. On the other hand, if unusual and disturbing noises are made, and particularly if they are regularly and persistently made, and if they are of a character to affect the comfort of a man's household, or the peace and health of his family, and to destroy the comfortable enjoyment of his home, a court of equity will stretch out its strong arms to prevent the continuance of such injurious acts."

In the present case, the court below being of opinion that the nuisance might be abated by removing the operating room to some other part of defendant's building, merely enjoined the carrying on of the hospital in the building adjoining complainants' premises, until such

removal should be made. The decree also restrained defendant from permitting persons occupying rooms in the hospital to throw refuse matter upon complainants' premises. The relief granted in this respect was properly allowed. The occupants of the rooms were under the control of defendant, and it was therefore responsible for their actions, within the limits of that control.

Counsel for defendant criticise the terms of the injunction awarded by the decree, as being uncertain, vague and indefinite. The effect of the injunction is, however, to restrain defendant from using its building as a hospital, during the continuance of the present internal construction, and while the emergency operating room is maintained in its present proximity to complainants' residence. It is apparent that the purpose was to require the removal of the operating room to some other portion of the building, where complainants would not be annoyed by the noises emanating therefrom. The requirement in this respect is, we think, sufficiently certain and definite. We do not see any merit in the objection which is made to the amendment, which was allowed to be filed, to the original bill. The allowance was clearly proper, and it does not appear that defendant was in any way prejudiced or injured thereby. It is suggested, that by reason of the oversight of defendant's counsel in failing to examine carefully the amendment, no answer was filed to the averment with respect to the throwing of refuse on complainants' property. But any possible prejudice to defendant in this respect, was avoided by the agreement of complainants' counsel, that the answer filed should be considered as a denial of the facts contained in the amended bill. Testimony was presented by both sides as to the deposit of refuse on complainants' premises. We do not see that defendant has any just cause to complain of the filing of the amended bill.

The assignments of error are all dismissed at the cost of appellant, and the decree of the court below is affirmed.