**SWETLAND et al. v. CURTISS AIRPORTS CORPORATION et al.**

Nos. 5812, 5813.

Circuit Court of Appeals, Sixth Circuit.

Jan. 8, 1932.

202

C. P. Hine, of Cleveland, Ohio (Thompson, Hine & Flory, of Cleveland, Ohio, on the brief), for appellants, Swetland.

H. G. Hotchkiss, of New York City, and H. J. Crawford, of Cleveland, Ohio (Cuthell, Hotchkiss & Mills, of New York City, and Squire, Sanders & Dempsey and Griswold, Green, Palmer & Hadden, all of Cleveland, Ohio, on the brief), for cross-appellants, Curtiss Airports, etc.

H. Stewart McDonald, Jr., of New York City, amicus curiæ for Aeronautical Chamber of Commerce of America.

Mabel Walker Willebrandt, of Washington, D. C., amicus curiæ for the Aviation Corporation.

Before DENISON, MOORMAN, and HICKENLOOPER, Circuit Judges.

MOORMAN, Circuit Judge.

F. L. and R. H. Swetland own a tract of 135 acres of land located on the west side of Richmond road in the village of Richmond Heights, Ohio, on which they had constructed before 1929 residences and improvements at a cost approximating $115,000. Shortly before or on May 28, 1929, the Curtiss Airports Corporation and its allied companies purchased for $398,048 a tract of 272 acres of land on the east side of Richmond road immediately opposite the Swetland land. Upon learning of the purchase of the property by the air companies, and being informed of their intention to construct and operate an airport thereon, the Swetlands notified the Curtiss Corporation May 28 that such use of the property would destroy their property for residential purposes. Notwithstanding this notice, the air companies proceeded with their plans to establish the airport, and, being advised of that fact, the Swetlands, on June 1, 1929, brought this action to enjoin them from using the property for such purpose. Upon the hearing of the case the District Court enjoined the defendants from permitting dust from the operation of the airport to fly or drift in substantial and annoying quantities over the plaintiffs' property, from dropping or distributing circulars from aeroplanes while passing over it, and from flying or permitting aeroplanes under their control to fly over it at an altitude of less than 500 feet. The court refused to enjoin the use of the property as an airport, or as a place for the training of student aviators and the giving of exhibitions of aviation, or for the parking of automobiles, and further refused to enjoin flights over the plaintiffs' property at a height above 500 feet. Plaintiffs appeal from so much of the decree as refused to grant the full relief for which they prayed, and defendants appeal from that part of it which enjoins the operation of their planes over the property below an altitude of 500 feet.

Plaintiffs contend that the full relief prayed for in their bill should have been granted, first, because the operation of the airport and aviation field, though properly conducted, so materially interferes with the enjoyment of their property as to constitute an abatable nuisance; and, second, that the flying of aeroplanes at any distance above their property is a trespass which in the nature of the operation of the air field must constantly recur, and which a court of equity should accordingly enjoin. Both contentions are denied by defendants, which affirmatively assert as to the second that plaintiffs do not own the air space above their property and have no right to prevent its use at will for flying purposes short of the creation of a nuisance.

We first consider the contention that the flying of an aeroplane through the air spaces over plaintiffs' lands is a trespass which, when recurring as a necessary incident to the operation of the air field, must be enjoined. The proposition is affirmed by appellants upon the maxim, Cujus est solum ejus est usque ad coelum. We are told that this maxim was imported into the English law by Lord Coke (liber 1, § 1, p. 4), and that it has been approved in Baten's Case (1611) 9 Coke's Reports 54(b); Fay v. Prentice (1845) 1 C. B. 827; Corbett v. Hill (1874) 9 L. R. Eq. 671; and Ellis v. Loftus (1874) L. R. 10, C. P. 10. The popularity of the phrase with the courts of this country is attested by its repetition in the law reports of practically every state. Its relation to aviation has been the subject of much discussion in the legal literature of the past ten years.[1] We do not discuss these

[1] The Law of Aviation, Edmund F. Trabue, June 6, 1923; volume 4, No. 1, Jan. 1910, Amn. Journal International Law, p. 97, Simeon E. Baldwin; British Year Book International Law, 1921-22, p. 167, De Montmorency; Law of the Air, Elliott, Indiana Law Journal, Dec., 1930; The Private Ownership of Air Space, Bouve, 1 Air Law Review, 232 (April, 1930) and 376 (Nov. 1930); Property in the Air as Affected by the Aeroplane and the Radio, Jome, 62 Amn. Law Review, 887; The Rights of Air Spaces Superincumbent on Land, 137 Law Times, 154; Aviation and the Public Purpose Doctrine, Fitzhugh, Virginia Law Review, Dec. 1930; Aerial Trespassers, Valentine, 24 Juridical Review, 321; Ownership and Sovereignty of the Air Space above Landowner's Premises with Special References to Aviation, Hise, Iowa Law Review, Feb. 1931; The Extent of the Right of the Private Owner of Land to the Space above, 11 Bimonthly Law Review, 135, 159.

numerous articles nor the authorities referred to in argument, many of which are cited in the opinion of the trial court. 41 F.(2d) 929. It is said that the early cases which embedded the maxim into the body of the law were decided upon the theory of nuisance and not trespass. We cannot admit that basis of decision. But none of those cases nor any of the later ones undertakes to define the term "ad coelum," if indeed that term is one of constancy or could be defined. In every case in which it is to be found it was used in connection with occurrences common to the era, such as overhanging branches or eaves. These decisions are relied upon to define the rights of the new and rapidly growing business of aviation. This cannot be done consistently with the traditional policy of the courts to adapt the law to the economic and social needs of the times. The Ohio decisions [2] are likewise inconclusive, and, lacking any controlling precedent, we resort to a consideration of the plaintiffs' rights in relation to the necessities of the period. From that point of view we cannot hold that in every case it is a trespass against the owner of the soil to fly an aeroplane through the air space overlying the surface. This does not mean that the owner of the surface has no right at all in the air space above his land. He has a dominant right of occupancy for purposes incident to his use and enjoyment of the surface, and there may be such a continuous and permanent use of the lower stratum which he may reasonably expect to use or occupy himself as to impose a servitude upon his use and enjoyment of the surface. See Portsmouth Co. v. United States, 260 U. S. 327, 43 S. Ct. 135, 67 L. Ed. 287. As to the upper stratum which he may not reasonably expect to occupy, he has no right, it seems to us, except to prevent the use of it by others to the extent of an unreasonable interference with his complete enjoyment of the surface. His remedy for this latter use, we think, is an action for nuisance and not trespass. We cannot fix a definite and unvarying height below which the surface owner may reasonably expect to occupy the air space for himself. That height is to be determined upon the particular facts of each case. It is sufficient for this case that the flying of the defendants over the plaintiff's property was not within the zone of such expected use. We think the question is un-

affected by the regulation promulgated by the Department of Commerce, under the Air Commerce Act of 1926 (49 USCA § 171 et seq.), and adopted by the state of Ohio, requiring aeronauts to fly in rural sections at a height not less than 500 feet above the surface, for in our view that regulation does not determine the rights of the surface owner, either as to trespass or nuisance.

The air field was not fully developed at the time of the trial, but as partially developed it had been operated for a sufficient length of time to show its effect, when completed as planned, upon the plaintiff's property. It is the purpose of the defendants to equip the field with all the facilities necessary and incident to a first-class airport, at which there will be conducted complete flying operations, including an aviation school. It is to be equipped with facilities for accommodating and servicing aeroplanes, and with beacon and boundary lights to enable aviators to take off and to land at night. There are to be runways, an "all way field" on which landings and take-offs may be made in any direction, four hangars, and a service station for automobiles, with a parking place for 250 automobiles along the west side of the Richmond road. The distance from this road to the nearest point of the landing field is less than 500 feet, and to the hangars and fairways from 600 to 1,200 feet. The residences of the appellants are 250 to 300 feet west of the center of this road. The rules of the Division of Aeronautics require that a plane be warmed up before using it in flight. The period of instruction for students is about 20 hours, and it appears that during that period the student makes about ten flights an hour, a total of twenty take-offs and landings per hour. Take-offs and landings are required to be made "up-wind," and, while the prevailing wind is neither east nor west, when there is a wind from either of these directions there will necessarily be much flying over plaintiff's property, and often it will be at a much lower altitude than 500 feet. The plaintiffs will undoubtedly suffer much annoyance from the noises made by this low flying and the warming up, taking off, and landing of aeroplanes on the field.

■■■ The defendants have the right to establish airports, but they cannot lawfully establish one at a place where its normal operation will deprive plaintiffs of the use and enjoyment of their property. Ross v. Butler, 19 N. J. Eq. 294, 97 Am. Dec. 654. In Baltimore & Potomac R. R. Co. v. Fifth Baptist Church, 108 U. S. 317, 2 S. Ct. 719,

[2] Winton v. Cornish, 5 Ohio, 477; Hilliard v. N. Y. & C. Gas Coal Co., 41 Ohio St. 662, 52 Am. Rep. 99; Young v. Thedieck, 28 Ohio Ct. App. 239; Quigley v. Fireproof Storage Co., 18 Ohio Cir. Ct. (N. S.) 320.

726, 27 L. Ed. 739, it was said: "That is a nuisance which annoys and 'disturbs one in the possession of his property, rendering its ordinary use or occupation physically uncomfortable to him. For such annoyance and discomfort the courts of law will afford redress by giving damages against the wrong-doer, and when the cause of the annoyance and discomfort are continuous, courts of equity will interfere and restrain the nuisance"—citing Crump v. Lambert, L. R. 3 Eq. 409. In that case it was contended that the legislative authority given the railroad company to bring its tracks into the municipality and construct shops and engine houses therein exempted it from liability for injury resulting from the ordinarily careful operation of an engine house and machine shop on a tract of land immediately adjoining the church. It was held that the authority conferred was accompanied by the 'implied qualification "that the works should not be so placed as by their use to unreasonably interfere with and disturb the peaceful and comfortable enjoyment of others in their property." See, also, Richards v. Washington Terminal Co., 233 U. S. 546, 34 S. Ct. 654, 58 L. Ed. 1088, L. R. A. 1915A, 887, and Henderson v. Sullivan, 159 F. 46, 49 (6 C. C. A.). We cannot doubt from the evidence in this case that the brightly illuminated field with the noises incident to its operation, however careful defendants may be, will unavoidably interfere with, if not destroy, the plaintiffs' enjoyment of their property. The plaintiffs have already suffered much annoyance and discomfort, and the evidence shows a property depreciation of about $65,000. Besides, there are other injuries which the plaintiffs will suffer. They have resided on their property for many years, in one case for a quarter of a century. They desire to continue to live there. If the defendants are permitted to use this air field as they now contemplate, the plaintiffs will be put to the inconvenience of leaving their property and seeking other places to live. These inconveniences with the severance of their social relations in the community will result in injuries that cannot be measured in damages.

The cases cited by defendants in support of their contention that abatement should be denied and the plaintiffs remitted to their remedy at law are inapplicable.[3] In many of them there was not a precedent or concurrent notice, and in others the inconvenience that the defendant would suffer as compared to that resulting to plaintiff was so great that abatement would have been inequitable. On the other hand, the courts have not hesitated to enjoin the operation of a legitimate business which, because of its location, constituted a private nuisance, when it clearly appeared that there was no other complete remedy for the injury done.[4] In the case at bar the amount of defendants' expenditures at the time they received notice of the injury that would be done plaintiffs was not more than $398,048, and probably only $270,000. Presumably the property was worth and is now worth what the defendants paid for it. To permit them to use it as they contemplate using it would result in continuous annoyance and discomfort to the plaintiffs, making their property valued at approximately $165,000 practically unusable for residential purposes. It is true that there are cases in which the landowner must submit to great annoyance in the interest of the public. This is not that character of case, for there is no showing that this site is indispensable to the public interest; indeed, it appears that the defendants have already acquired another site and may acquire still another, if they desire it, either of which is as accessible to Cleveland as the present field. Considering, therefore, the balance of conveniences, the defendants are not entitled to use the property as they now contemplate. The record does not contain sufficient evidence to determine whether other parts of the property could be used without seriously interfering with the plaintiffs' enjoyment of their properties. That question we leave open for consideration by the trial court upon the remand of the case. It is sufficient for present purposes that the defendants should be enjoined from operating the airport as now located.

The decree will be modified accordingly.

HICKENLOOPER, Circuit Judge (concurring).

I concur in the conclusion reached in the majority opinion, but cannot concur in that portion which seems to me to create a distinction between flights in the upper and lower strata, founded upon reasonable expectation

---

[3] Mountain Copper Co. v. United States (C. C. A.) 142 F. 625; McCarthy v. Bunker Hill & Sullivan Mining Co. (C. C. A.) 164 F. 927; Bliss v. Washoe Copper Co. (C. C. A.) 186 F. 789; Sussex Co. v. Midwest Refining Co. (C. C. A.) 294 F. 597; Smith v. Staso Milling Co. (C. C. A.) 18 F.(2d) 736.

[4] Kestner v. Homeopathic M. & S. Hospital, 245 Pa. 326, 91 A. 659, 52 L. R. A. (N. S.) 1032, Ann. Cas. 1916A, 123; Judson v. Los Angeles Suburban Gas Co., 157 Cal. 168, 106 P. 581, 26 L. R. A. (N. S.) 183, 21 Ann. Cas. 1247; Stotler v. Rochelle, 83 Kan. 86, 109 P. 788, 29 L. R. A. (N. S.) 49; Saier v. Joy, 198 Mich. 295, 164 N. W. 507, L. R. A. 1918A, 825.

of use, and to hold that, although a single flight over the plaintiff's land may not constitute a trespass, such flights may be so continuous as in the aggregate to do so. This precise question was not directly involved in Portsmouth Co. v. United States, 260 U. S. 327, 43 S. Ct. 135, 67 L. Ed. 287, which went no further than to hold that use of the lower stratum of overlying air might be so continuous and permanent as to amount to a disseizin in whole or in part by the imposition of a servitude, for which taking the United States government must compensate. It seems to me obvious that, if the aggregate of a large number of flights constitutes a trespass, it must be because each of said flights is itself a trespass, and that a trespass, in its technical sense, cannot be made up of a series of acts no one of which, standing alone, amounts to such trespass. So also, if a court of equity has jurisdiction of this phase of the case, it must be upon the ground of repeated trespasses for which no adequate remedy existed at law, and not upon the ground of a single disseizin or imposition of a servitude.

This highly technical question seems to me unnecessary of decision in the present case, for whether the court takes jurisdiction to enjoin the continuance of a nuisance or to restrain repeated trespasses, or both, it is quite clear that the acts of the defendant constitute a nuisance and should be enjoined upon that ground. This is the basis of my concurrence.