196 P.2d 464

BRANDES et al. v. MITTERLING et al.

No. 5006.

Supreme Court of Arizona.

July 19, 1948.

James Elliott Dunseath, of Tucson, for appellants.

John W. Ross, of Tucson, for appellees.

UDALL, Superior Judge.

The plaintiffs in the lower court, hereinafter called the appellants, are the in-

dividual owners of certain improved and unimproved real property located on East Broadway, Tucson, Arizona, which they acquired prior to the year 1945. The total acreage owned by appellants is approximately 140 acres and, with improvements, is valued at approximately $250,000. During May and September, 1945, the defendants in the lower court, hereinafter called the appellees, acquired approximately 28 acres of land which is surrounded on the east, south and west by the lands owned by appellants.

The same year, the appellees built a hangar and constructed dirt landing strips on their tract of land. One of the strips runs in a northwest-southeast direction and is approximately 2700 feet long and the north-south strip runs directly north of the hangar and is approximately 2400 feet long. The first strip above mentioned terminates on the south at Broadway which is paralleled by a power line approximately 30 feet high and a telephone line approximately 20 feet high. The two air strips merge near the center of the field where they broaden into one wide strip. There are no buildings or obstructions, other than a low fence, where the strip terminates on the north end of appellees' property. Appellees' airfield was inspected by and received the unwritten approval of the Civil Aeronautics Administration. The Veterans Administration also approved it for the training of ex-service men to fly under Federal Law known as the GI Bill of Rights.

The appellants, Raphael Brandes and, Elsie Brandes, his wife, and Brandes School at Tucson, a corporation, are the owners and operators of a resident boarding school located on about ten acres bordering the east boundary of the land owned by the appellees. The school has been in operation since the year 1940. It has an average of sixty-five students, male and female, between the ages of 6 and 16 years, and employs approximately ten instructors. The school building, 2 stories high, is located 145 feet east of the south end of the long air strip, and a short distance northeast of the school building on the Brandes property is located a water tank 60 feet high used by the school.

The appellants, Hayward N. Hoyt and Lottie D. Hoyt, are the owners of about 75 acres of land which borders on the south boundary of the land owned by appellees, and is separated from said appellees' land by that street known as Broadway. The Hoyts acquired this property during the years of 1926 and 1931 and immediately thereafter improved the same by erecting a very substantial private residence, which lies approximately 400 yards south of Broadway and appellees' airport. The appellant, Solana Land Company, a corporation, is the owner of approximately 56 acres of unimproved land lying immediately west of the airport.

The appellants assert that they have been injured by various unlawful acts resulting from the operation of the airport. They

contend that it constitutes a nuisance which may be abated only by closing it. The acts charged to be unlawful and the elements of the nuisance may be summarized as follows: dust from the airport enters the school buildings, settling on furniture, beds and floors, pollutes the air and causes inconvenience to the students and instructors; noise from the airport makes it difficult to carry on conversations, interrupts classes, and distracts the minds of the students and the students cannot rest during the regularly prescribed and scheduled rest periods; noise and dust from the airport have made some of the students ill, and hospitalized one of the appellants; airplanes flying to and away from the airfield fly over the land of appellants at an average altitude of approximately 50 feet and endanger both life and property; repeated low flights over appellants' homes and properties, causing loud and disturbing noises, frightening appellants, their families, servants, and the students attending Brandes School; depreciation in value of adjoining properties by reason of the proximity of the airport.

An injunction is prayed for to terminate the use of the field as an airport and to forbid the continuance of the various alleged acts causing injury. Appellees deny that a nuisance exists and deny the acts complained of are unlawful.

It is the uncontroverted evidence that Skyriders, Inc., also known as the Wagon Wheel Airport, owned by appellees, did considerable business during the summer months of 1946, and there was great activity at this airfield up to date of trial in lower court which occurred in November, 1946. It had as high as 16 planes on the field, all single-engine planes ranging from 65 to 225 horsepower, 7 of which were in use for training students and student pilots. At time of trial, there were approximately 60 students taking training at appellees' airfield. Planes were in the air as much as 20 hours a day. Each student had to take off and land 2½ hours during his course of training, requiring 10 minutes to complete the pattern for each take-off and landing, and planes were constantly going through this maneuver during the early morning hours and late evening hours. At least half of the take-offs and landings were made on the southwest corner of the airport next to the Brandes School and clouds of dust were created by these operations. During this period of time, the employees at the Brandes School cleaned the premises twice a day but could not keep it free from dust. With 16 planes operating in such close proximity, there can be no question but that great and awesome noises were created, especially when the 225 horsepower planes were being warmed up ready for use. The evidence is clear and unmistakable that when the planes were taking off from the south end of the diagonal air strip, they were only 145 feet from the school building, and approximately 45 feet from the Brandes property line; also in landing on said strip, they were approxi-

mately the same distance away from the school property.

■ The appellants testified that the planes would fly very low at altitudes of less than 100 feet over the Hoyt property and the Brandes property, barely clearing the power lines and school buildings, and on several occasions, they had seen the pilots suddenly "gun" their engines to get over the hump of the power wires, then go down again.. While there is some conflict in the testimony with respect to planes flying directly over the Brandes School properties at a low altitude, the evidence is clear that there have been repeated flights, principally in take-offs and landings, on the diagonal strip, and the court will take cognizance of the fact that when such flights were being made, it would take only a slight cross wind from the west or southwest to cause an inexperienced pilot to drift over the Brandes property at a low altitude.

There was definite proof adduced at the trial to show that Mrs. Brandes, one of the appellants, suffered a nervous breakdown because of the noise created by the planes and her apprehension of the damage they might do. These conditions also interfered with the rest of the school children to the extent that some had to be given sedatives to quiet them, and other activities of the school were interrupted in that it prevented voices from being heard and distracted the minds of the children. Two planes crashed on or near their airport, one on the west side of the field and the other near the Hoyt house, above mentioned.

This case was tried to the court without a jury. At the conclusion of the trial, judgment was entered against the appellants and for the appellees, dismissing the complaint and denying the injunctive relief prayed for therein. All the plaintiffs in the lower court have joined in the appeal from said judgment and order.

There are two assignments of error: (1) The trial court erred in granting the defendants' motion to strike and in denying the plaintiffs' motion to amend; (2) The trial court erred in finding that the airport owned and operated by the defendants is not a private nuisance, in entering judgment for said defendants and in denying plaintiffs' motion for new trial.

We shall discuss only the second assignment of error as the court's ruling on this issue will obviate the necessity of giving any time or space to the first assignment of error.

■ An airport is not a nuisance per se, but may become a nuisance because of unsuitable location or improper manner of construction or operation. Thrasher v. Atlanta, 178 Ga. 514, 173 S.E. 817, 99 A.L.R. 158; 2 C.J.S., Aerial Navigation, § 29.

The Arizona Legislature in 1929, Arizona Code Annotated 1939, Sec. 48-110, declared lawful the flight in aircraft over lands and waters of this state as follows:

"Flight in aircraft over the lands and waters of this state is lawful, unless at such a low altitude as to interfere with the then existing use to which the land or water, or the space over the land or water, is put by the owner, or unless so conducted as to be imminently dangerous to persons or property lawfully on the land or water beneath. * . * * "

"Section 48-120. *Construction of act.*— This act shall be so interpreted and construed as to effectuate its general purpose *to make uniform the law of those states which enact it and to harmonize, so far as possible, with Federal laws and regulations on the subject of aeronautics.* It shall not be interpreted or construed to apply in any manner to aircraft owned and operated by the Federal Government." (Emphasis supplied.)

■ The Civil Air Regulations, of which courts take judicial notice, expressly regulate minimum safe altitudes of flight by providing:

"*Except when necessary for take-off or landing,* no person shall operate aircraft below the following altitudes:

"(a) .*: * *

"(b) Over congested areas. Over the congested areas of cities, towns, or settlements, or an open-air assembly of persons, an altitude of 1,000 feet above the highest obstacle within a horizontal radius of 2,-000 feet from the aircraft.   .  .   .

"(c) Over other than congested areas. An altitude of 500 feet above the surface, except over open water or sparsely populated areas  *  *  *. When flight is necessary at an altitude of less than 500 feet above the surface, *the pilot must avoid creating any hazard to persons or property on the surface which may result from such flight.*" (Emphasis supplied.) Civil Air Regulations, Part 60, Sec. 107, effective October 8, 1947.

'The appellants have asked the court to determine for this state how low an airplane pilot landing or taking off may fly over the land of his neighbor without the flight becoming a nuisance.

"In our consideration of the implications of this case, we are first met with the maxim familiar to the profession: 'Cujus est solum, ejus est usque ad coelum et ad inferos" (Whose is the land, his is also that which is above and below it). This maxim has been applied through the ages to a variety of circumstances, and many courts in this country and England, in considering a landowner's right in the airspace above, have given it the sanctity of an axiom or corollary in the field of mathematics.

"We find that the maxim has not been generally applied in cases which establish rights in airspace occupied by aviators in the operation of aircraft. The federal government has, in fact, rejected the doctrine and has placed navigable airspace, as

prescribed by the Civil Aeronautics Authority, in the public domain, and hence not subject to private ownership or control. United States v. Causby, supra, (328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206).

"By the provisions of U.S.C.A., Title 49, Sec. 176(a), it is provided: 'The United States of America is (hereby) declared to possess and exercise complete and exclusive national sovereignty in the air space above the United States * * *.'

"'Sovereignty' is defined as meaning '2. Supremacy in respect of power, domination, or rank; supreme dominion, authority, or rule.' Oxford English Dictionary.

"In flying below the 'navigable airspace,' does the aviator commit trespass while landing and taking off, if, in so doing, he flies over the lands of others?" Antonik v. Chamberlain, OhioApp., 78 N.E.2d 752, 757.

"The Civil Aeronautics Administration of the United States Department of Commerce provides that exclusive of taking off or landing upon an airport or other land area, aircraft shall not be flown below certain minimum safe altitudes of flight. The minimum provided for over property, such as plaintiffs', is 500 feet. Civil Aeronautics Bulletin No. 22, 7th Ed., October, 1943, p. 8. Even if it be claimed that the proposed flights over plaintiffs' properties by airplanes would only occur while planes were taking off or landing, the frequency of such flights and their proximity to plain-tiffs' respective properties might nevertheless cause such a nuisance as to destroy their peaceful use and quiet enjoyment." Warren Tp. School Dist. No. 7, etc., v. City of Detroit (Agar et al. v. Same), 308 Mich. 460, 14 N.W.2d 134, 138.

There is no definite yardstick that may be used in determining how low an airplane may fly over the property of others in landing or taking off; however, flying at low altitudes incident to landing and taking off may constitute trespass, as it may cause more than mere apprehension of injury. And, extensive low flying, causing unreasonable annoyance to occupants of land below, is a substantial interference with enjoyment of the property. That kind of flying is expressly outside the statutory definition of lawful flight. Therefore, we can safely say, under our state law, that an airplane pilot, landing or taking off, should not fly so low as to "worketh hurt, inconvenience, or damage" to the owner of the soil over which he is flying.

"No complaint is made concerning flights at altitudes over 500 feet, and respondents claim no privilege to fly planes at lower altitudes except in landing and taking off. Whether in landing, taking off, or otherwise, flight over another's land, so low as to interfere with the then existing use to which the land is put, is expressly outside of the statutory definition of lawful flight; and being an unprivileged intrusion in the space above the land, such flight is a trespass. 1 Restatement of Torts,

Sec. 159. Extensive flying at low altitudes, accompanied by excessive noise and occasioning unreasonable annoyance to the occupants of the land below, and apprehension of danger on their part, has been held to constitute an element of nuisance in that it interferes substantially with the enjoyment of the property by the occupants. Swetland v. Curtiss Airports Corp., 6 Cir., 55 F.2d 201, 83 A.L.R. 319." Vanderslice v. Shawn, Del.Ch.1942, 27 A.2d 87, 90.

While it is well established that an airport is not a nuisance per se, it appears from the cases on this subject that have been decided to date, that an airport may be, or create, a private or public nuisance in fact. In two of those cases the airport itself was completely abated, Swetland v. Curtiss Airports Corp., 6 Cir., 55 F.2d 201, 83 A.L.R. 319 (construction and operation of privately-owned airport enjoined at request of owners of residential property located across road from airport site); Gay v. Taylor, Com.Pl., Chester County, 1932, 19 Pa.Dist. & Co.R. 31 (operation of privately-owned airport enjoined at request of owners of adjoining country residences and hospital). In another case, the normal airport activities and operations were so circumscribed by injunction as to amount to complete abatement, People v. Dycer Flying Service, Inc., Cal.Super.Ct.L.A. County, 1939, 1939 U.S.Av.Rep. 21, 235 C.C.H. 1834 (injunction issued at request of city enjoining operation of privately-owned airport in manner causing disturb-

ance to landowners in adjacent residential area, as a public nuisance). In several cases, injunctive relief was granted against operation of the airport in a certain manner or against low flying in connection with the use of the airport. Thrasher v. City of Atlanta, 1934, 178 Ga. 514, 173 S.E. 817, 99 A.L.R. 158 (judgment reversed with directions to issue injunction against continued spreading of dust in excessive or unreasonable quantities over residential property in vicinity of Atlanta Municipal Airport); Burnham v. Beverly Airways, Inc., 1942, 311 Mass. 628, 42 N.E.2d 575 (decree affirmed upholding injunction against flying below height of 500 feet over residence 2800 feet from city-controlled but privately-operated airport); Mohican & Reena, Inc., v. Tobiasz, 1938 U.S.Av.Rep. 1, 235 C.C.H. 2205 (master's report filed in Super.Ct. Hampden, Mass., 1938) (corporate owner of summer camp for children one-half mile from defendants' privately-owned airport found entitled to injunction against flying below altitude of 1000 feet within 500 feet of camp property); Vanderslice v. Shawn, Del.Ch.1942, 27 A.2d 87 (residential owners held entitled to injunction enjoining owners of private airport from permitting flights at less than 100 feet over adjacent dwellings); Alhambra Airport case, 13 J. of Air L. & Comm. 138 (1941) (decree issued on petition of certain taxpayers and Alhambra Board of Education, enjoining further use of private airport for pilot training and limiting future use to emer-

gency landings and actual business needs of two aircraft manufacturing plants located at airport); Dlugos v. United Air Lines, 1944 U.S.Av.Rep. (Ct.Comm.Pl.Pa. Lehigh Co., May 27, 1944) (airline enjoined from operating planes at altitude below 100 feet over plaintiff's fields adjacent to municipal airport, on days when plaintiff engaged in farming such fields, not to exceed 10 days during following year, provided 5 hours' written notice given airline at its airport office).

In still another and more recent case, the court warned the defendant city that its operation of a proposed new airport would probably be a nuisance by reason of its nearness to three schools, a church, and several homes, and if so would be enjoined. Warren Tp. School Dist. No. 7, etc., v. City of Detroit, supra.

The fact situations of at least part of the cases just cited are analogous to the case at bar, and it would seem that low-flying planes, the spreading of excessive quantities of dust, and the establishment of airports in the immediate vicinities of homes and schools are all subjects for injunctive relief.

"But the constant noise of flights of aeroplanes over a children's camp was held in Mohican & Reena v. Tobiasz, 1938; Mass.Super.Ct., Hampden County, 1938, 1938 U.S.Av.Rep. 1, to constitute a nuisance, the court concluding that the noise interfered with the sleep and rest of the children and interrupted other activities of the camp in that it prevented voices from being heard and distracted the minds of the children." 140 A.L.R. 1366.

"The unnecessary and improper creation and spreading of dust by the operation of a municipal airport, with the result that dust in excessive and unreasonable quantities permeates the atmosphere around a neighboring home, and is deposited in like quantities therein and thereabout, whereby its comfort and use are injuriously affected, and the health of the owner's wife impaired so as to necessitate the expense of medical treatment, constitutes a nuisance, affording grounds for an injunction and damages. Thrasher v. Atlanta, supra." 140 A.L.R. 1366.

"The noise of aeroplanes warming up, taking off, and landing at an airport, the dust arising from the use of a dirt driveway leading to the landing field, the congregation of crowds and the apprehension of danger arising from the low-altitude flights were held in Gay v. Taylor, supra, collectively to constitute a nuisance as to residents in the vicinity of such airport." 140 A.L.R. 1369.

The case before us presents legal and equitable principles of far-reaching effect. Whatever we decide here has a bearing on every airport in this state. On the part of appellants, it is a question of health, comfort and peace of mind. On the part of the appellees, it is a question of whether

their airport should be closed at its present site and moved to a new location.

In determining this matter we have kept in mind the rule that this court is not the trier of the facts, and that where there is a dispute in the evidence from which reasonable men could arrive at different conclusions as to the ultimate facts, we will not disturb the findings of the trial court because we do not agree with the conclusions reached. City of Phoenix v. Anderson, 65 Ariz. 311, 180 P.2d 219. We are of the opinion, however, from the record before us that there is no serious conflict in the evidence in this case. All of the appellees' witnesses testified as to conditions *on the airport,* whereas the appellants' witnesses testified as to the condition existing on their respective properties and there was no one who controverted them. Furthermore it must be remembered that the airport was established long after plaintiffs had acquired and improved their valuable holdings. While aviation should be encouraged it must not be done by overriding the civil rights of others.

We consider that the findings of fact upon which the judgment of the trial court was based were not supported by the evidence. The use made by appellees of their property constituting a nuisance, the trial court should have granted to appellants the injunctive relief prayed for. The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

STANFORD, C. J., and UDALL, J., concurring.

NOTE: Justice Arthur T. LaPRADE having disqualified himself, the Honorable Don T. UDALL, Judge of the Superior Court of Navojo County, was called to sit in his stead.